(No. 11534.—Judgment affirmed.)

ELIZABETH ARADO, Appellant, *vs.* DAVID ARADO, Appellee.

*Opinion filed October 23, 1917—Rehearing denied Dec. 6, 1917.*

1. DIVORCE—*marriage between cousins of the first degree is void and not merely voidable.* Under the amended act of 1887 a marriage between cousins of the first degree is void and not merely voidable, and such a marriage, being prohibited by law and made a criminal offense, cannot become valid by ratification or estoppel.

2. SAME—*party to marriage with cousin of first degree is not estopped to allege illegality.* A party to a marriage with a cousin of the first degree is not equitably estopped to allege the illegality of the marriage as a defense to a suit for divorce and alimony, as in such case the public interest prevents the application of the rule that equity will not entertain the complaint of one who comes into court with unclean hands.

3. SAME—*temporary alimony and solicitor's fees rest in discretion of court.* Temporary alimony and solicitor's fees are not allowed as a matter of right but rest in the sound discretion of the court under the circumstances of the case, and are dependent on the inability of the complainant to provide for herself and pay the expenses of the suit and upon the ability of defendant to do so.

CARTER, C. J., dissenting.

APPEAL from the First Branch Appellate Court for the First District;—heard in that court on writ of error to the Circuit Court of Cook county; the Hon. CHARLES M. WALKER, Judge, presiding.

KING, BROWER & HURLBUT, for appellant.

CHARLES P. MOLTHROP, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

The question in this case is whether the statute by which marriages of cousins of the first degree are declared to be incestuous and void is to be interpreted as declaring that such a marriage is void in the sense of being a nullity, ineffectual under any circumstances to bind the parties or to confer marital rights, or is to be construed as being voidable and possessing validity until disaffirmed by the act of one or both of the parties to the marriage, so that the right to disaffirm may be lost by conduct creating an equitable estoppel. The suit was commenced by the filing of a bill on February 2, 1915, in the circuit court of Cook county, by the appellant, Elizabeth Arado, against the appellee, David Arado, to whom she had been married by a ceremonial marriage on October 4, 1894. She charged the appellee with habitual drunkenness, extreme and repeated cruelty and adultery, and alleged that they had two children,—a boy aged seventeen years and a girl aged fourteen years,—and prayed for temporary alimony, solicitors' fees, a divorce and custody of the children. The appellee answered, admitting the ceremonial marriage but denying the charges of misconduct made in the bill, and alleging that the marriage was void and of no effect because he and the appellant were cousins of the first degree. The appellee also filed a cross-bill, setting up the statute declaring marriages between first cousins incestuous and void and praying the court to set aside the marriage. To this cross-bill the appellant answered that she and the appellee were communicants of the Roman Catholic church, a religious denomination which permitted cousins of the first degree to marry and from time immemorial had recognized such marriages to be valid; that the appellee was estopped from denying the validity of the marriage by a contract under

seal, made in compromise of a suit brought by her for separate maintenance in which he threatened to set up the defense of the invalidity of the marriage; that by the agreement it was declared that the children were lawfully begotten children of herself and the appellee; and that other conduct of the defendant had created an equitable estoppel against the disaffirmance of the marriage contract. The appellee excepted to the matter set up as a compromise of the separate maintenance suit and the matter alleged as an equitable estoppel. The appellee testified that he and the appellant were first cousins, and the court entered a decree reciting that the cause was heard upon the exceptions and upon a motion of the appellant, based on her verified bill, for temporary alimony and the allowance of solicitors' fees, sustaining the exceptions to the answer to the cross-bill, denying the motion for temporary alimony and solicitors' fees, declaring the marriage void and of no effect and dismissing the bill of appellant for want of equity. The Appellate Court for the First District affirmed the decree and granted a certificate of importance and an appeal to this court.

The statute enacted in 1819 provided that males of the age of seventeen and females of the age of fourteen might be joined in marriage if not prohibited by the laws of God, which have been commonly understood as the prohibitions declared by verses from 6 to 18, inclusive, of the eighteenth chapter of Leviticus. The marriage of cousins of the first degree was not prohibited by those laws, and the most distant relation in consanguinity therein stated was that of uncle and niece or aunt and nephew. The disabilities created by the Levitical law were canonical, but were recognized by the common law to the extent of treating the prohibited marriages as voidable and not void until sentence of nullity should be obtained. They were considered valid for all civil purposes until sentence of separation, which must have been made in the lifetime of the parties, and the court would not annul a marriage after the death of either party,

by which the issue would be bastardized. (1 Blackstone's Com. 434; 2 Kent's Com. 95.) While the statute of 1819 was in force the question of the validity of the marriage of Joseph Bonham and Sarah Beer, his niece, was involved in a suit, and the court held that the marriage not having been nullified by sentence of separation in the lifetime of Joseph Bonham, was made good for all civil purposes and the wife was entitled to dower. (*Bonham* v. *Badgley,* 2 Gilm. 622.) In the Revised Statutes of 1845 the General Assembly made a statutory rule as to what marriages should be declared void on account of consanguinity, and by section 124, division 11, of the Criminal Code declared that marriages between parents and children, (including grandparents and grandchildren of every degree,) between brothers and sisters, (of the half as well as of the whole blood,) and between uncles and nieces and aunts and nephews, were incestuous and absolutely void. Section 125 of the same division provided that persons within the degrees of consanguinity within which marriages were declared by the preceding section to be incestuous and void, who should intermarry with each other, should be liable to indictment and upon conviction be punished by imprisonment in the penitentiary not exceeding ten years. (Rev. Stat. 1845, p. 173.) The next general statutory revision of the Criminal Code was in 1874, and under the title of "Incest" the General Assembly re-enacted section 125, division 11, as section 157 of division 1, and omitted from the Criminal Code section 125, prohibiting marriages on account of consanguinity. (Rev. Stat. 1874, p. 376.) Section 125 was transferred to the chapter relating to marriages and was re-enacted as section 1 of that chapter. (Rev. Stat. 1874, p. 694.) The Revised Statutes of 1845 declared marriages within the prohibited degrees to be absolutely void, and in the revision of 1874 the word "absolutely" was omitted and they were merely declared to be incestuous and void. Under these statutes, and up to the year 1887, marriages of cousins of

the first degree were valid, but in that year section 1 of the revision of 1874 was amended by adding marriages between cousins of the first degree, the amended statute otherwise being the same as in the revision of 1874. (Laws of 1887, p. 225.) The question whether the marriage of the appellant and appellee was void in the proper sense of the term, or voidable merely, must be determined from the amended act of 1887 and the provision of the Criminal Code making the parties to a marriage declared to be incestuous and void punishable by imprisonment in the penitentiary; and there is a further question whether a marriage prohibited by law, and which constitutes a criminal offense, can become valid by ratification or through an equitable estoppel.

Reasons advanced by counsel for the appellant for construing the word "void" as "voidable" are, that the word is of uncertain meaning and may mean either of no effect or as valid until disaffirmed, and consequently giving rise to an equitable estoppel to dispute the validity of a marriage; that the General Assembly in the revision of 1874 dropped the qualifying word "absolutely," thereby showing an intent to repeal so much of the earlier statute as gave the word the meaning of nullity; and that in adding to the marriage statute, in 1887, the class of marriages between cousins of the first degree, which had been valid previously, the General Assembly manifested an intent to give a different meaning to the words "incestuous" and "void" as to that class from the meaning as applied to classes condemned previously by the Criminal Code.

There is no provision of the statute giving jurisdiction to a court to hear and determine the validity of a marriage between cousins of the first degree or to pronounce a sentence of separation, so that the word "void" cannot be construed as "voidable" upon such a decree by a court of competent jurisdiction. The General Assembly itself declared such marriages to be incestuous and void, regardless of disaffirmance or the action of a court, and also made the mar-

riage a criminal act for which punishment was provided. The courts in the earlier cases naturally manifested a disposition to follow the common law rule in the construction of statutes. Incest was not indictable at the common law but was punished by the ecclesiastical courts as an offense against good morals, but by the statute it is punishable by imprisonment in the penitentiary. It would be contrary to reason to say that an act which is criminal can be valid for any purpose, or that a marriage contracted by persons incapable of entering into the contract can have any validity. In the revision of 1874 the qualifying word "absolutely" was dropped from the statute, but when that fact is considered in connection with the Criminal Code, any inference that the meaning of the word "void" was changed in any way cannot arise. Under such statutes marriages within the prohibited degrees are void and not merely voidable. (*Fearnow* v. *Jones,* 34 Okla. 694; L. R. A. 1916C; *Blaisdell* v. *Bickum,* 139 Mass. 250; *Hayes* v. *Rollins,* 68 N. H. 191; *McIlvain* v. *Schibley,* 109 Ky. 455.) The provision of the Criminal Code providing punishment for incestuous marriages was general in its application, and applied to all marriages which were at the time of its enactment or might thereafter be declared to be incestuous and void, and the fact that a change was made in the prohibited degrees could not have any effect to give a different meaning to the word "void" as applied to the class of marriages added to the statute.

Aside from a construction of the statute, no estoppel could arise as against a disaffirmance of an illegal marriage. There was no such estoppel under the rule of the common law. In West Virginia by statutory enactment marriages between relations of the forbidden degrees are only voidable, but the Court of Appeals decided in *Martin* v. *Martin,* 54 W. Va. 301, (1 Ann. Cas. 612,) that if the parties could continue the marriage relationship without violating the criminal laws of the State the court might be justified

in refusing to entertain the plaintiff's bill to annul his marriage, but where the law forbids the continuance of the relation it is the duty of both parties to have the marriage annulled. The general rule that equity will not entertain the complaint of one who comes into the court with unclean hands does not apply, and if a party to an illegal marriage is so wanting in honor as to be willing to publish his own criminal offense and disgrace and humiliate his children and one with whom he has lived in the marital relation, the public interest requires that he should not be prevented from doing so. The defendant was not barred from alleging the illegality of the marriage.

The chancellor denied the motion of the appellant for temporary alimony and solicitors' fees, based upon her verified bill of complaint. Temporary alimony and solicitors' fees are not allowed as a matter of right but rest in the sound discretion of the court, dependent on the inability of the complainant to provide for herself and pay the expenses of the litigation and upon the ability of the defendant to do so. The discretion is to be exercised in view of the conditions and circumstances of the case. The bill failed to allege that the complainant was unable to support herself and pay the expenses of the suit and there was no other evidence of that fact. The bill alleged that the defendant was a saloon-keeper owning three pieces of real estate in Chicago and that his net income was $600 per month. The answer admitted that the appellee was in the saloon business and owned several pieces of real estate but denied that he had the income alleged, and in the cross-bill he alleged that the appellant was possessed of a separate and private income of about $250 per month. All these pleadings were verified, and in the absence of any further showing the court did not err in denying the motion.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*

Mr. Chief Justice Carter, dissenting.