## ATKESON v. SOVEREIGN CAMP W. O. W. et al.

No. 12463—Opinion Filed May 8, 1923.

Rehearing Denied July 3, 1923.

(Syllabus.)

1. Marriage — Capacity of Parties to Contract—Recent Divorcees.

The relation of marriage is created by a civil contract in which the state has a vital interest, it being the foundation of the family and society; and where a party has been divorced and the statute provides that the decree shall not become absolue e for a period of six months, held, any marriage in violation thereof is void; neither of the parties to the divorce has the capacity to legally contract a marriage with any other person during such period. An attempted marriage in violation of this statute is void in the state of domicile or any other place.

2. Insurance — Fraternal Benefit Certificate —Persons Entitled to Benefits.

Under the statutes of this state and the constitution and by-laws of the Sovereign Camp Woodmen of the World, no person not in relation to the insured as provided therein or legally married to the member is qualified to participate in the benefits of a fraternal benefit certificate of the order.

3. Divorce—Decree — Effect — Time for Remarriage.

Under the statutes of this state relative to decree of divorce, the parties are legally and fully divorced from all obligations and duties toward each other from and after the signing of the decree, with the sole exception that the contract is not fully and absolutely dissolved for a period of six months from and after the rendition of the decree. Thus the parties are in every way divorced except that the inhibition and restriction is placed upon them preventing their remarriage within the period of time specified in the statute.

4. Parties—Necessary Parties — Bringing in New Parties.

When it is made to appear that a determination of an action cannot be had without the presence of others not parties to the proceedings, and who are interested in the subject-matter of the litigation, the court may of its own motion order them brought in and made parties.

5. Insurance—Fraternal Insurance — Beneficiaries—Persons Qualified.

Where a fraternal insurance society instituted an action to have determined the rightful beneficiaries under a certificate of membership issued to one of its members, and the agreed facts show that such member had married a second time within six months from the date of a decree of divorce granted to his first wife, that such member had two minor children by his first wife and that soon after his second marriage he caused his second wife to be named as the beneficiary in the certificate of membership in the society, and that such member died before the expiration of six months from date of the decree of divorce, held, the second marriage being void and the second wife being prohibited from taking the insurance under the applicable statute of this state and the by-laws of the society, the first wife being disqualified under the statute and by-laws of the society by reason of the decree of divorce, that the two minor

children of the deceased by his first wife, as the heirs of the deceased, are entitled to collect the insurance.

Error from District Court, Carter County; B. C. Logsdon, Judge.

Action by the Sovereign Camp Woodmen of the World against Minnie Atkeson and Mattie Atkeson to determine beneficiary of life insurance. From an adverse judgment, Minnie Atkeson brings error. Reversed, and remanded, with directions.

J. F. McKeel and Robt. S. Kerr, for plaintiff in error.

Champion, Champion & George, for defendants in error.

KENNAMER, J. This action was instituted in the district court of Carter county by the defendant in error, Sovereign Camp Woodmen of the World, filing its bill of interpleader making Minnie Atkeson and Mattie Atkeson defendants, to determine who is the beneficiary of a certificate of membership in the plaintiff's society issued December 12, 1916, to Lee B. Atkeson insuring the life of said Atkeson in the amount of $1,000. The defendants, Minnie Atkeson and Mattie Atkeson, each filed a separate answer and cross-petition praying the judgment of the court that they be decreed to be the beneficiary of the insurance due from the plaintiff under the certificate of membership.

On the 27th day of April, 1921, the cause was tried to the court upon an agreed statement of facts, and judgment was entered in favor of the defendant Mattie Atkeson, decreeing her to be the beneficiary of the insurance payable by the plaintiff under the certificate of membership of the deceased, Lee B. Atkeson.

The defendant Minnie Atkeson prosecutes this appeal to reverse the judgment of the trial court.

The material facts necessary to be considered in determining the questions presented by this appeal, briefly stated, are:

The plaintiff, Sovereign Camp Woodmen of the World, is a fraternal beneficiary association organized and incorporated under the laws of the state of Nebraska, engaged only in the business of the fraternal beneficiary association, and on December 12, 1916, being authorized to do business in the state of Oklahoma, issued a certificate of membership, No. 9806, in said society to Lee B. Atkeson, naming Minnie Atkeson beneficiary with the relationship of wife, payable to said beneficiary on proof of death, in the amount of $1,000.

Lee B. Atkeson, the insured, and the defendant Minnie Atkeson were legally married on the 23rd day of November, 1911, and lived together as husband and wife until some time in the summer of 1918. Of said marriage there were two children born, whose names and ages are as follows: Pete Atkeson, 8 years of age; Harry Atkeson, 6 years of age.

In the summer of 1918, Lee B. Atkeson and Minnie Atkeson were separated, and at no time thereafter lived together as husband and wife.

On the 29th day of August, 1919, in an action instituted by Minnie Atkeson in the district court of Pontotoc county, Okla., against Lee B. Atkeson, Minnie Atkeson was granted a decree of divorce from Lee B. Atkeson. The decree of divorce contained the following provision: "It is further ordered by the court that this decree does not become absolute and take effect until six months from the date thereof." Subsequent to the decree of divorce, on the 15th day of September, 1919, and within six months from the date of said decree of divorce Lee B. Atkeson, the insured, and Mattie Jeffreys, now the defendant Mattie Atkeson, being residents of the state of Oklahoma, went to the city of Gainesville, Tex., and there procured a marriage license from the proper authority authorizing the marriage of Lee B. Atkeson and Mattie Jeffreys. Thereupon the said Lee B. Atkeson and Mattie Jeffreys, in the city of Gainesville, Tex., caused a marriage ceremony to be performed and returned to the state of Oklahoma and lived together as husband and wife until the date of the death of Lee B. Atkeson, February 4, 1920.

It is agreed that said last marriage of Lee B. Atkeson and Mattie Atkeson established the relation of husband and wife unless such marriage is void by virtue of the provisions of the decree of divorce and sections 4971 and 4973 of Rev. Laws 1910; that section 3 of the constitution, laws, and by-laws of the Sovereign Camp Woodmen of the World designated who may be beneficiaries under certificates of membership issued, and reads as follows:

"The object of this society shall be to combine white persons of sound bodily health, exemplary habits and good moral character, between the ages of sixteen and fifty-two years into a secret, fraternal beneficiary and benevolent society, provide funds for their relief, comfort the sick and cheer the unfortunate by attentive ministrations in times of

sorrow and distress; promote fraternal love and unity, create funds from which, on reasonable and satisfactory proof of death of a beneficiary member· who has complied with all the requirements of this society, there shall be paid a sum not to exceed five thousand ($5,000) dollars to the person or persons named in his certificate as beneficiary, or beneficiaries, which beneficiary or beneficiaries shall be his wife, children, adopted children, parents, brothers and sisters or other blood relations, or to persons dependent upon the member."

Section 72 of the constitution and laws of the plaintiff society provides for the manner for changing of beneficiaries by paying a fee of 25c and surrendering the original certificate and requesting in writing on the back of the certificate the name or names of the new beneficiary or beneficiaries, and providing in case the original certificate is lost or the possession thereof is withheld that the insured make satisfactory proof under oath of the loss of such certificate or the facts and circumstances of the withholding of the same.

In December, 1919, Lee B. Atkeson made an affidavit to the effect that the original certificate issued to him, in which Minnie Atkeson was named as beneficiary, had become lost, and requested the issuance of a new certificate in which Mattie Atkeson, his second wife, should be designated as beneficiary therein. That in pursuance of said affidavit the plaintiff society did on the 9th day off January, 1920, issue to the said Lee B. Atkeson a new certificate in which the defendant Mattie Atkeson was named as beneficiary, and the new certificate remained unrevoked by the insured, Lee B. Atkeson, on the date of his death.

It was agreed that the original certificate issued had, ever since the date of its issuance, remained in the possession of Minnie Atkeson, first wife of the deceased.

The two chidren of the deceased and the defendant Minnie Atkeson were not made parties to the action.

In our view of this case, under the admitted facts, the first question presented for our consideration is whether or not the second marriage of Lee B. Atkeson to Mattie Atkeson at Gainesville, Tex., is void. The applicable statutes necessary to be considered, in determining this question (Rev. Laws 1910, secs. 4970, 4971, 4973) read:

"4970. A divorce granted at the instance of one party shall operate as a dissolution of the marriage contract as to both, and shall be a bar to any claim of either party in or to the property of the other, except in cases where actual fraud shall have been committed by or on behalf of the successful party.

"4971. A party desiring to appeal from a judgment granting a divorce, must within ten days after such judgment is rendered file a written notice in the office of the clerk of the court, duly entitled in such action, stating that it is the intention of such party to appeal from such judgment. If notice be filed as aforesaid, the party filing the same may commence proceedings in error for the reversal or modification of such judgment at any time within four months from the date of the decree appealed from and not thereafter. It shall be unlawful in any event for either party to such divorce suit to marry any other person within six months from the date of the decree of divorcement; and if the notice be filed and proceedings in error be commenced as hereinbefore provided, then it shall be unlawful for either party to such cause to marry any other person until the expiration of thirty days from the day on which final judgment shall be rendered pursuant to such appeal. Any person marrying contrary to the provisions of this section shall be deemed guilty of bigamy, and such marriage shall be absolutely void."

"4973. Every decree of divorce shall recite the day and date when the judgment was rendered in the cause, and that the decree does not become absolute and take effect until the expiration of six months from said time, or as provided in case of appeal."

We believe that these statutes are clear in their meaning and are mandatory. It is our opinion, from these statutes and the controlling decisions in this jurisdiction and others, construing this statute and similar ones, that any marriage attempted to be contracted in violation of the express provisions of the law is absolutely void. Durland v. Durland (Kan.) 74 Pac. 274; Neese v. Territory, 9 Okla. 535, 60 Pac. 300; Smith v. Fife (Wash.) 30 Pac. 1059; McLennan v. McLennan (Ore.) 50 Pac. 802.

There is a distinct historical reason for these decisions, coming from the earliest days of our system of jurisprudence. At common law and under our modern statutes, the relation of marriage was and has always been considered as a civil contract, requiring for its consummation, among other things, the legal capacity of the persons to contract. It is likewise as well settled that until parties are finally and absolutely divorced, that is, the legally existing contract beween them is legally and absolutely dissolved, the parties are incapable of contracting marriage with any one. For these

reasons, we are unable to conceive of any sound reason, until the period of six months has transpired, why a marriage contract entered into in violation of the statute should be held to be other than a void contract, wherever entered into.

The case of Wilson v. Cook, 256 Ill. 460, 100 N. E. 222, 43 L. R. A. (N. S.) 365, discusses this subject thoroughly, and treats both the English and American decisions exhaustively. In the opinion by Dunn, C. J., the court, after citing numerous authorities, said:

"These cases sustain the principle that, where a state has enacted a statute lawfully imposing upon its citizens an incapacity to contract marriage by reason of a positive policy of the state for the protection of the morals and good order of society against serious social evils, a marriage contracted in disregard of the prohibition of the statute, wherever celebrated, will be void."

And then, quoting from the English case of Brook v. Brook, 9 H. L. Cas. 193, 5 Eng. Rul. Cas. 783, the opinion reads:

"It is quite obvious that no civilized state can allow its domiciled subjects or citizens, by making a temporary visit to a foreign country, to enter into a contract to be performed in the place of domicile, if the contract is forbidden by the law of the place of domicile as contrary to religion or morality, or to any of its fundamental institutions."

This rule, we believe, is impervious to attack, and is peculiarly applicable to the case at bar.

The public policy of this state, as declared by the Legislature in the passage of the divorce statutes quoted, supra, prohibits the marriage of divorced parties within the period of six months from the rendition of the decree. And though marriage be a contract, it is one of extraordinary dignity and public concern. It is an institution in which the state is vitally concerned, being the foundation of the family and society; and all rights of domiciled citizens of a state and their qualifications to enter the contractual relation depend upon and are controlled by the policy of the state as announced by the Legislature. Such policy the courts cannot question, and must always endeavor to uphold.

In the case of Lanham v. Lanham, 117 N. W. 787, 17 L. R. A. (N. S.) 804, the Supreme Court of Wisconsin, in a well-reasoned opinion by Chief Justice Winslow, construed a statute in terms almost identical with section 4971, Rev. Laws 1910, containing the restriction against remarriage within the prohibitive period, and held that the Wisconsin statute imposing a restriction against remarriage of both parties was not a penal law, but was prohibitive, and that the parties obtaining a decree of divorce, under the statutory restriction, are incapable of entering into a marriage contract with a third person within the period of restriction in any other state such as the court of the state of domicile will recognize and enforce. The language of the opinion peculiarly applicable to the question under consideration is as follows:

"A state undoubtedly has the power to declare what marriages between its own citizens shall not be recognized as valid in its courts; and it also has the power to declare that marriages between its own citizens contrary to its established public policy shall have no validity in its courts, even though they may be celebrated in other states, under whose laws they would ordinarily be valid. In this sense, at least, it has power to give extraterritorial effect to its laws. The intention to give such effect must, however, be quite clear. So the question must be, in the present case, whether our Legislature, by the act quoted, declared a public policy, and clearly indicated the intention that the law was to apply to its citizens wherever they may be at the time of their marriage. To our minds there can be no doubt that the law was intended to express a public policy. There have been many laws in other states providing that the guilty party in a divorce action shall not remarry for a term of years, or for life, and these laws have generally been regarded merely as intended to regulate the conduct of the divorced party within the state, and not as intended to follow him to another jurisdiction and prevent a marriage which would be lawful there: in other words, they impose a penalty local only in its effect. Under this construction, the remarriage of such guilty party in another state has generally been held valid, notwithstanding the prohibition of the local statute. Of this class are the cases of Frame v. Thormann, 102 Wis. 654, 79 N. W. 39, Van Voorhis v. Brintnall, 86 N. Y. 18, 40 Am. Rep. 505, and State v. Shattuck, 69 Vt 403, 401 L. R. A. 428, 60 Am. St. Rep. 936, 38 Atl. 81, and others which might be cited.

"It is very clear, however, that the statute under consideration is in no sense a penal law. It imposes a restriction upon the remarriage of both parties, whether innocent or guilty. Upon no reasonable ground can this general restriction be explained, except upon the ground that the Legislature deemed that it was against public policy and good morals that divorced persons should be at liberty to immediately contract new marriages. The inference is unmistak-

able that the Legislature recognized the fact that the sacredness of marriage and the stability of the marriage tie lie at the very foundation of Christian civilization and social order; that divorce, while at times necessary, should not be made easy, nor should inducement be held out to procure it; that one of the frequent causes of marital disagreement and divorce actions is the desire on the part of one of the parties to marry another; that, if there be liberty to immediately remarry, an inducement is thus offered to those who have become tired of one union, not only to become faithless to their marriage vows, but to collusively procure the severance of that union under the forms of law for the purpose of experimenting with another partner, and perhaps yet another, thus accomplishing what may be called progressive polygamy; and, finally, that this means destruction of the home and debasement of public morals. In a word, the intent of the law plainly is to remove one of the most frequent inducing causes for the bringing of divorce actions. This means a declaration of public policy, or it means nothing. It means that the Legislature regarded frequent and easy divorce as against good morals, and that it proposed, not to punish the guilty party, but to remove an inducement to frequent divorce.

"To say that the Legislature intended such a law to apply only while the parties are within the boundaries of the state, and that it contemplated that, by crossing the state line, its citizens could successfully nullify its terms, is to make the act essentially useless and impotent, and ascribe practical imbecility to the lawmaking power."

Therefore, we are of the opinion that the attempted marriage of Lee B. Atkeson to Mattie Atkeson, while the former was under the restrictions imposed by the laws of this state, by making a temporary visit to the state of Texas, was void, and that the said Mattie Atkeson can derive no rights nor base any claim thereon in the courts of this state.

The statute of this state relating to the payment of insurance by benevolent societies is as follows:

"Benefits in case of death of members shall be paid to the families, heirs, blood relatives, affianced husband or wife, or to the person dependent upon the member, or to be used for the payment of the last sickness and funeral expenses of the members, all in accordance with the constitution and by-laws of the association." (Comp. Stats. 1921, sec. 6774.)

The by-laws and constitution of the Woodmen of the World, as quoted supra, are specific in their wording that the payment shall be made to only those persons mentioned therein; and Mattie Atkeson, being in no wise qualified by these provisions to receive the benefits of Lee B. Atkeson's policy, can have no right thereunder, the attempted substitution of her name as beneficiary in the policy being ineffectual. Gray v. Sovereign Camp W. O. W. (Tex.) 106 S. W. 176.

Having disposed of all claims of Mattie Atkeson to the benefits of the policy, our next consideration is as to the rights of Minnie Atkeson thereunder.

In the earlier days of our system of jurisprudence, there were two distinct and separate types of divorces which the courts rendered. They were what were called the divorce "a mensa et thoro" and the divorce "a vinculo matrimonii." The former was a conditional decree, leaving in effect the marriage contract, in so far as the question of status was concerned, but relieving the parties from all obligations and rights as to cohabitation, support, and property interests. The latter was an absolute dissolution of the marriage relation and changed the status of the parties from coverture to that of single persons. Tiffany on Persons and Domestic Relations, p. 171; 9 R. C. L. 486; 19 C. J. 157.

This distinction has been carried down to the present day by the courts of this country and is still deemed to exist in the judicial construction of our statutes. It was clearly the intention of our Legislature, in passing the divorce statute of this state, that when all the proceedings were completed, an absolute divorce should be effected. But by providing in the decree it is not to become absolute until after six months from date and for the restriction of the right of the parties to remarry within a period of six months, the Legislature limited the effect of the decree for a period of time, so that it is impossible to declare the divorce an absolute one in all respects. Therefore, the courts of this state, Kansas, and elsewhere have held that on the signing of the decree a divorce of the nature of the common-law divorce "a mensa et thoro" is effected; which divorce operates to separate the parties and in every way divorce them except to destroy the former status of a single person and substitute a new one therefor. They have held that the divorce is effected in every manner and for every purpose of preventing, on the grounds of public policy, such an occurrence as happened in the case at bar. All that is necessary, under this rule of construction, for the parties to become absolutely and finally divorced, by the operation of the statute, is the ex-

piration of the specified time of six months. In re Smith, 2 Okla. 153, 37 Pac. 1099; Durland v. Durland, supra; Barnett v. Frederick, 33 Okla. 49, 124 Pac. 57.

Taking this construction of our laws, Minnie Atkeson lost all right and interest in the property of Lee B. Atkeson by the signing of the decree of divorce; and we believe that in accordance with the evident intention of the constitution and by-laws of the Woodmen of the World, she was no longer the "wife" for the purpose of receiving the benefits of a policy of insurance, payable only to blood relatives or dependents. In fact, she was no longer his wife, nor he her husband, for any other purpose than to prevent their remarriage to any other parties for a period of six months from their legal decree of separation. Barnett v. Frederick, supra.

From an examination of the record, we observe that there are two children of Lee B. Atkeson by Minnie Atkeson, who were not made parties to this suit. In the opinion of this court, from the showing made, they are the only persons entitled in any way to the benefits of the certificate.

This conclusion is supported by the case of Johnson v. Grand Lodge A. O. U. W. of Kansas et al. (Kan.) 137 Pac. 1190.

Subdivision B, sec. 55, of the by-laws of the Woodmen order provides:

"In the event that the benefits are made payable to the wife of a member, and they be divorced from each other and no new declaration of beneficiary has been made, the benefits shall be payable as though the designated beneficiary had pre-deceased the member, and no new beneficiary had been designated, as provided in this section and section three of these laws."

It is plain from this section of the by-laws that the divorced wife is not entitled to receive the benefits of the certificate in question. Lawson v. United Benevolent Assn. (Tex.) 185 S. W. 976; Whitesell v. Northwestern Mutual Life Insurance Co. (Tex.) 221 S. W. 575; Western & Southern Life Insurance Co. v. Webster, 172 Ky. 444, 189 S. W. 429; Hatch v. Hatch, 35 Tex. Civ. App. 373, 80 S. W. 411.

Section 224, Comp. Stats. 1921, reads as follows:

"The court may determine any controversy between parties before it, when it can be done without prejudice to the rights of others, or by saving their rights; but when a determination of the controversy cannot be had without the presence of other parties, the court must order them to be brought in."

Apparently, it was intended to remedy such a situation here existing; and it was held in the case of Simpson et al. v. Hillis, 30 Okla. 51, 120 Pac. 572, construing this section, that the court, by virtue of the authority given it hereby, has the power and is obliged, on its own motion, to call persons interested in the controversy, and not legally made parties thereto, into court and to adjudicate their rights without resorting to another action.

Having determined that neither Mattie Atkeson nor Minnie Atkeson is entitled to the benefits of the money in the hands of the interpleader, the judgment of the court below is hereby reversed; and it appearing from the agreed statement of facts before us that the children of Lee B. Atkeson by Minnie Atkeson are the persons legally entitled thereto, the cause is remanded, with directions to the court below to order the said children brought into court and to render judgment for such parties.

JOHNSON, C. J., and NICHOLSON, COCHRAN, BRANSON, HARRISON, and MASON, JJ., concur. McNEILL and KANE, JJ., dissent.