## OLIVER v. OLIVER.

### No. 10405.

United States Court of Appeals
District of Columbia Circuit.

Argued Feb. 3, 1950.

Decided Oct. 23, 1950.

Mr. Joseph J. Lyman, Washington, D. C., for appellant.

Mr. Anthony L. Montaquila, Washington, D. C., also entered an appearance for appellant.

Mr. Abraham Chaifetz, Washington, D. C., for appellee.

Before PROCTOR, BAZELON and WASHINGTON, Circuit Judges.

PROCTOR, Circuit Judge.

This appeal concerns the validity of a ceremonial marriage at Baltimore, Maryland, between the parties, and the legitimacy of a child born to appellant.

The controversy grows out of the following facts. Merton A. Oliver, appellee, was the husband of Frances Mae Oliver. She sued for absolute divorce in the District Court upon the ground of desertion. The divorce was granted April 17, 1946. The decree, drawn agreeably to § 421 of Title 16, D.C.Code (1940),[1] provided that the divorce was not to become "absolute and take effect" until six months after date of the decree. Nevertheless, within the six months' period, on May 6, 1946, the Baltimore marriage was entered into, but the parties never thereafter cohabited or lived together. On September 1, 1946, about four months after the marriage, a child was born to appellant. On October 14, 1946, still within the six months' period, appellant brought suit against appellee under § 415 of Title 16, D.C.Code (1940),[2] for maintenance of herself and child. Appellee admitted the marriage with appellant, but alleged that they had not thereafter cohabited or lived together. He denied paternity of the child. Yet, he consented to an order for custody and maintenance as to the child. Later he moved to vacate the order, alleging that he had entered into the marriage through fraud and compulsion; *that he had a former wife living from whom he was not finally divorced;* and that he was not the father of the child. The court found that at the time of the Baltimore marriage appellant had personal knowledge of appellee's marital status with Frances Mae and that since the marriage the parties had not cohabited or lived together. The court concluded that the Baltimore marriage was void *ab initio;* that no common law marriage existed, and that the child was born "out of wedlock." Therefore, the court held that it was without jurisdiction to award cus-

---

1. 16 D.C.Code (1940) § 421. "No final decree annulling or dissolving a marriage shall be effective to annul or dissolve the marriage until the expiration of the time allowed for taking an appeal, nor until the final disposition of any appeal taken, and every final decree shall expressly so recite. Every decree for absolute divorce shall contain the date thereof and no such final decree shall be absolute and take effect until the expiration of six months after its date. (Apr. 19, 1920, 41 Stat. 567, ch. 153, § 983a; Aug. 7, 1935, 49 Stat. 540, ch. 453, § 4.)"

2. 16 D.C.Code (1940) § 415 as amended by Pub.L. No. 111, 81st Cong., 1st Sess., June 20, 1949. "Whenever any *husband* shall fail or refuse to maintain his wife and minor children, if any, although able so to do, the court, on application of the wife, pendente lite and permanently, may decree that he shall pay her, periodically, such sums as would be allowed to her as pendente lite or permanent alimony in case of divorce for the maintenance of herself and the minor children, if any, committed to her care by the court, and the payment thereof may be enforced in the same manner as directed in regard to the payment of permanent alimony." [Emphasis supplied.]

The statute is applicable only to a husband. See Rapeer v. Colpoys, 1936, 66 App.D.C. 216, 85 F.2d 715.

11 D.C.Code (1940) § 907, provides that the Juvenile Court, with certain exceptions not here relevant, "shall have original and exclusive jurisdiction * * * To determine the paternity of any child alleged to have been born out of wedlock and to provide for his support."

tody or maintenance under § 415 of Title 16, D.C.Code (1940). No finding was made as to the child's paternity. The order for support was vacated and the complaint dismissed. This appeal follows.

In appellant's behalf it is contended that the Baltimore marriage was valid; therefore, that appellee, as the lawful husband of appellant, was suable in the District of Columbia for maintenance under § 415 of Title 16, D.C.Code (1940). The argument is based upon the theory that the local statute and decree, postponing appellee's divorce for six months, although valid and binding in the District of Columbia, were without legal effect in Maryland; hence that the Baltimore marriage operated to render appellee's divorce absolute and validate the marriage. The decisions in Tillinghast v. Tillinghast, 1928, 58 App. D.C. 107, 25 F.2d 531, and Loughran v. Loughran, 1934, 292 U.S. 216, 54 S.Ct. 684, 78 L.Ed. 1219, are relied upon in support of this contention. We are unable to see their application. The Tillinghast case concerned 41 Stat. 567 (1920), an amendment to the District of Columbia Code of 1901, postponing effectiveness of final decrees dissolving or annulling marriage "until the expiration of the *time allowed for taking an appeal*,"[3] or until the final disposition of any appeal taken.[4] The court held that the provision was intended *only* for the benefit of an unsuccessful party in a divorce decree to preserve the status quo pending right of appeal. Hence that marriage of that party within the time for taking the appeal operated as a waiver; terminated the suspension period, and left the marriage valid. In the Loughran case a question was raised as to the extraterritorial effect of a provision in Section 966 (later repealed) of the District of Columbia Code of 1901, that in cases of absolute divorce "the innocent party only may remarry". Although the Court refrained from passing directly upon the

question, deciding the case on other grounds, it did state the rule upon the subject as follows: "Marriages not polygamous or incestuous, *or otherwise declared void by statute, will, if valid by the law of the state where entered into, be recognized as valid in every other jurisdiction.* * * * The mere statutory prohibition by the State of the domicile either generally of the remarriage of a divorced person, or of remarriage within a prescribed period after the entry of the decree, is given only territorial effect. Such a statute does not invalidate a marriage solemnized in another state in conformity with the laws thereof."[5] 292 U.S. at page 223, 54 S.Ct. at page 686.

This statement of the law accords with the general judicial conception of statutes providing for absolute divorce with a prohibition against future marriage of the guilty party. Such prohibitions in no way limit absolute dissolution of an existing marriage as to both parties. They merely impose a *personal penalty* upon the offender, which has no extraterritorial effect, for one state will not enforce the punitive provisions of another. Moore v. Hegeman, 1883, 92 N.Y. 521, 44 Am.Rep. 408; Thorp v. Thorp, 1882, 90 N.Y. 602, 43 Am.Rep. 189. See also 2 Beale, Conflict of Laws, 685, § 130.1 (1935 Ed.); 2 Nelson, Divorce and Annulment, 604 (2d Ed.1945).

The local statute, 16 D.C.Code (1940) § 421, is altogether different. It imposes no personal prohibition or restriction against future marriage by either party to a divorce. It deals only with divorce as such, and declares that no decree therefor "shall be absolute and take effect until the expiration of six months after its date." This contemplates a provisional decree of divorce only, which cannot mature and become effective until lapse of the intervening time. The distinction between such a decree and one prohibiting remarriage clearly appears in Restatement, Conflict of Laws,

---

**3.** Emphasis supplied.

**4.** This provision still prevails as part of 16 D.C.Code (1940) § 421, to which has been added the provision of August 7, 1935, 49 Stat. 540, ch. 453, § 4, postpon-

ing for six months the effectiveness of a divorce—the provision we are now considering.

**5.** Emphasis supplied.

§ 130, comment a (1934) : "a. *Provisional decree distinguished.* A distinction is to be noted between this case and a case where a divorce is, by the law governing it, provisional only until the lapse of a certain time, or the common case of a decree nisi, or the so-called interlocutory decree, which does not become absolute until further proceedings or after the lapse of a certain time. In such a case, neither party ceases to be married until the lapse of the given time, and neither can marry again in any state, since such marriage would be bigamous."

This statement of the law is strongly supported by decisions construing statutes similar to our own. State v. Grengs, 1948, 253 Wis. 248, 33 N.W.2d 248; Levanosky v. Levanosky, 1942, 311 Mass. 638, 42 N.E. 2d 561; Sanders. v. Industrial Commission, 1924, 64 Utah 372, 230 P. 1026; Heflinger v. Heflinger, 1923, 136 Va. 289, 118 S.E. 316, 32 A.L.R. 1088; Atkeson v. Sovereign Camp, W. O. W., 1923, 90 Okl. 154, 216 P. 467, 32 A.L.R. 1108; McLennan v. McLennan, 1897, 31 Or. 480, 50 P. 802, 38 L.R.A. 863; accord, Brand v. State, 1941, 242 Ala. 15, 6 So.2d 446; Means v. Means, 1940, 40 Cal.App.2d 469, 104 P.2d 1066; Johnson v. State Compensation Commissioner, 1935, 116 W.Va. 232, 179 S.E. 814; Sullivan v. Sullivan, 1934, 219 Cal. 734, 28 P.2d 914. See 2 Beale, Conflict of Laws, 683, § 130.1 (1935 Ed.).

Under the local statute the waiting period is made a preliminary and inseparable part of a proceeding for absolute divorce. Until that period has expired there is no complete and final termination of the marriage state. That such a waiting period was purposely designed seems perfectly clear from the language of the statute, and is borne out by the legislative record. In sponsoring the bill for revision of the divorce laws, Representative Carpenter of Kansas, author of the bill, speaking for the District of Columbia Committee, stated in replying to a question as to the reason for the six months' waiting period that, "in no event can the parties remarry until the lapse of six months, because the decree does not become binding until six months after its date." Other statements by members of the Committee clearly indicate that the provision was intended as a barrier to hasty and fraudulent divorces. 79 Cong.Rec. 11587 (1935).

We can see no escape from the conclusion that at the time of the Baltimore marriage appellee was still the husband of Frances Mae. The divorce had not become absolute and effective. The marriage had not been terminated. It remained undissolved and an attempted second marriage in violation of the District's law was void. Moreover, it appears that by the law of Maryland the second marriage was bigamous, a felony according to the criminal code of Maryland, Art. 27, Sec. 19, Annotated Code of Maryland (1939), and a nullity without the passage of any judicial decree declaring it void. Townsend v. Morgan, Md., 1949, 63 A.2d 743, 745, cited in United States v. Snyder, 1949, 85 U.S. App.D.C. 198, 177 F.2d 44. The marriage being void in the District of Columbia and the legality thereof having been drawn in question, it must be so decreed. For admittedly both parties were domiciled in the District of Columbia at the time of the marriage and continued so to be. Therefore, the marriage came under the ban of 30 D.C.Code (1940) § 101, which stamps as "void ab initio, without being so decreed, * * * The marriage of any persons either of whom has been previously married and whose previous marriage has not been terminated by death or a decree of divorce." This provision, coupled with § 105,[6] leaves no alternative but to treat the marriage as void. For there can be no doubt as to the binding effect of § 105 upon the parties, as it is clearly within the power of a state, and, *a fortiori,* of Congress legislating for

---

6. 30 D.C.Code (1940) § 105. "If any marriage declared illegal by the aforegoing sections shall be entered into in another jurisdiction by persons having and retaining their domicile in the District of Columbia, such marriage shall be deemed illegal, and may be decreed to be void in said District in the same manner as if it had been celebrated therein. (Mar. 3, 1901, 31 Stat. 1392, ch. 854, § 1287.)"

the District of Columbia, to impose such a restriction, or disqualification, upon its citizens. Brand v. State, supra; Heflinger v. Heflinger, supra; Atkeson v. Sovereign Camp, W. O. W., supra.

 The doctrine of estoppel is also invoked to sustain jurisdiction of the trial court to award support for the child under § 415 of Title 16, D.C.Code (1940). This conclusion is reached upon the theory that appellee cannot plead the invalidity of the Baltimore marriage because of his guilty participation therein. In support of this theory the familiar line of decisions is relied upon which bar one from attacking the legality of a present marriage [7] by undermining the validity of a prior divorce obtained through collusion and fraud, as illustrated by Goodloe v. Hawk, 1940, 72 App.D.C. 287, 113 F.2d 753; Saul v. Saul, 1941, 74 App.D.C. 287, 122 F.2d 64; and Ruppert v. Ruppert, 1942, 77 U.S.App.D.C. 65, 134 F.2d 497.

We think those decisions cannot be extended to support the present case for the fundamental reason that estoppel cannot be set up in opposition to a public policy laid down by the law-making power. Scott Paper Co. v. Marcalus Mfg. Co., 1945, 326 U.S. 249, 257, 66 S.Ct. 101, 90 L.Ed. 47. Marriage and divorce laws are of vital public concern. The state is interested in preserving the integrity of the marriage ties. Therefore, rules applicable to private contracts should not be permitted to thwart the public policy of the state established for protection of society. Heflinger v. Heflinger, supra at 118 S.E. 320. So it is that courts reject estoppel as a means of overcoming the invalidity of a marriage contracted in violation of law. Bell v. Bell, 1949, 206 Ga. 194, 56 S.E.2d 289; Reed v. Reed, 1947, 202 Ga. 508, 43 S.E.2d 539; Pennaman v. Pennaman, 1922, 153 Ga. 647, 112 S.E. 829; Arado v. Arado, 1917, 281 Ill. 123, 117 N.E. 816, 4 A.L.R. 28; Brownell v. Brownell, Sup.1947, 74 N.Y.S.2d 136; Beaudoin v. Beaudoin, 1946, 270 App.Div. 631, 62 N.Y.S.2d 920, 3d Dep't.; Campbell v. Campbell, Sup.1946, 62 N.Y.S.2d 245; Scafidi v. Scafidi, Sup.1945, 57 N.Y.S.2d 273; Heflinger v. Heflinger, supra. The principle is recognized in Goodloe v. Hawk, supra, involving the effect to be given an irregular foreign divorce. Justice Vinson, speaking for this court, said, 72 App.D.C. at page 290, 113 F.2d at page 756: "The state has an interest in the domestic relations of its citizens and in determining the effect to be given an irregular divorce decree inquiry must be made respecting the public policy in the premises. Since there has been no legislative declaration respecting the policy of the state toward irregular foreign divorces it must be determined judicially."

 The local statutes reveal a definite policy established by Congress against easy divorce and hasty remarriage of divorced persons. The waiting period of six months, 16 D.C.Code (1940) § 421; the designation of a bigamous marriage as "void ab initio, without being so decreed," with the provision that *"nullity may be shown in any collateral proceeding,"* [8] 30 D.C.Code (1940) § 101; the restriction against evasion by domiciliaries marrying in another jurisdiction, reinforced by the mandate that marriages accomplished by such evasion shall be deemed illegal, 30 D.C.Code (1940) § 105, altogether refute any idea that a public policy so clearly defined may be defeated by application of a general rule of law. How can estoppel be recognized in the present circumstances when the statute goes so far as to permit the "nullity" of a bigamous marriage to "be shown in any collateral proceedings" ?

A strong emotional appeal is made to uphold the Baltimore marriage as a means of supporting the child's legitimacy. To this end it is argued that the law should be liberally construed. But liberal construction will not suffice. Only by disregarding the law could that object be attained.

The judgment of the District Court is

*Affirmed.*

7. In these cases the parties had cohabited and lived together after marriage.

8. Emphasis supplied.