Clarence H. DILLARD and Gertrude F. Dillard, Appellants,

v.

Maryland Turner DILLARD, Appellee.

No. 15200.

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 28, 1959.

Decided Jan. 28, 1960.

Petition for Modification of Judgment
Denied March 4, 1960.

Mr. James H. Raby, Alexandria, Va., for appellants.

Mr. William Bogen, Washington, D. C., for appellee.

Before Mr. Justice BURTON, retired,* and WILBUR K. MILLER and BASTIAN, Circuit Judges.

Mr. Justice BURTON.

The issue in this case is whether the appellee, Maryland Turner Dillard, was the wife of Clarence D. Dillard, a federal employee, at the time of his death, July 8, 1958. If so, she then became his widow within the meaning of the Federal Employees' Group Life Insurance Act of 1954[1] and, as such, became entitled to the proceeds of his life insurance. It is not controverted that appellee's marital status, on July 8, 1958, depended on the validity and effective date of a Virginia decree of absolute divorce granted to the insured May 14, 1958, on the ground of appellee's desertion. She contends that by virtue of § 20–118 of the Virginia Code of 1950,[2] such decree of divorce did not dissolve

her marital status until September 14, 1958, four months after its issuance and over two months after the death of insured. For the reasons hereafter stated, we hold that, insofar as it applies to the issue before us, the decree of divorce finally dissolved appellee's marriage upon its issuance, with the result that, at the insured's death, appellee was no longer his wife and therefore did not become entitled to the proceeds of the insurance on his life.

The following facts are not in dispute: In 1953 the appellee married Clarence D. Dillard, who died intestate and childless July 8, 1958. He was an employee of the United States Post Office Department, insured for $5,000 under the Federal Employees' Group Life Insurance Act of 1954. Section 4 of the Act provides that where no beneficiary is designated by the insured, the proceeds of the insurance shall be paid to his widow. Relying on that provision, appellee filed, in the United States District Court for the District of Columbia, a complaint demanding that the insurance carrier, the Metropolitan Life Insurance Company, pay her the proceeds of the insurance. The company answered that it had received claims to those proceeds not only from appellee, but also from Clarence H. Dillard and Gertrude F. Dillard, respectively the father and mother of the deceased. The latter claimants relied on the provision in § 4

---

* Sitting by designation pursuant to 28 U.S.C. § 294(a).

1. "Sec. 4. Any amount of group life insurance and group accidental death insurance in force on any employee at the date of his death shall be paid, upon the establishment of a valid claim therefor, to the person or persons surviving at the date of his death, in the following order of precedence:

"First, to the beneficiary or beneficiaries as the employee may have designated by a writing received in the employing office prior to death;

"Second, if there be no such beneficiary, to the widow or widower of such employee;

"Third, if none of the above, to the child or children of such employee and descend-

ants of deceased children by representation;

"Fourth, if none of the above, to the parents of such employee or the survivor of them * * *." 68 Stat. 738, 5 U.S.C. § 2093, 5 U.S.C.A. § 2093.

2. "On the dissolution of the bond of matrimony for any cause arising subsequent to the date of the marriage, neither party shall be permitted to marry again for four months from the date of such decree, and such bond of matrimony shall not be deemed to be dissolved as to any marriage subsequent to such decree, or in any prosecution on account thereof, until the expiration of such four months; provided, that nothing herein contained shall be deemed to prohibit divorced persons from remarrying each other at any time." Va.Code, 1950, § 20–118.

that if there is no designated beneficiary, widow or child of the deceased, the proceeds shall be paid to his parents. The District Court granted permission for the company to pay the insurance proceeds into the registry of the court to abide its judgment. The court also ordered the parents to become parties to the action and, together with appellee, to interplead their claims.

The District Court denied the parents' motion for summary judgment but granted a like motion of appellee and ordered payment to her of the proceeds of the insurance, less certain attorney's fees and costs allowed to the company. The parents appealed.

Appellee alleged that she never had been served personally with notice of the Virginia divorce action and that she first learned of it when the decree was presented in this case as a ground for her disqualification to receive the insurance proceeds. She does not attack the validity of the decree, but contends that the decree did not and, under the law of Virginia, could not take effect for any purpose until four months after its date and, therefore, did not dissolve the marital bond until after the death of the insured.

While basically the issue depends upon the meaning of the word "widow" in the Insurance Act and that question is a federal question, it is recognized by both parties that the controversy turns upon the language of the Virginia decree of divorce and upon the effect of the Virginia Code of 1950.[3]

The decree[4] itself is specific as to its finality. It is headed "Final Decree." It recites that the marriage of Clarence Dudley Dillard to appellee "is hereby dissolved and the said Complainant, Clarence Dudley Dillard, be forever divorced from the Defendant, Maryland Dillard." At the end of the decree there is a further express declaration that "This Decree Is Final."

Appellee, however, points to the provision in the decree that "Neither Party Hereto shall be permitted to marry again for four months from the date of this decree." She claims that this, and the like provision in § 20–118 of the Virginia Code, not only prohibit a marriage of either of the parties to other persons within four months from the date of the decree, but also convert the "Final Decree" into an interlocutory decree that does not become final for any purpose until four months from its date.

Appellee, in addition, relies upon the further statutory provision of § 20–118 which reinforces the above prohibition against remarriage by providing not only that "neither party shall be permitted to marry again for four months from the date of such decree" but that "such bond of matrimony *shall not be deemed to be*

3. Tatum v. Tatum, 9 Cir., 1957, 241 F.2d 401, 405; Lembcke v. United States, 2 Cir., 1950, 181 F.2d 703, 706.

4.     "Final Decree
"This Cause, came on this 14th day of May, 1958, to be again heard upon the papers formerly read and upon the report of Hon. John C. McCarthy, Master Commissioner, together with the depositions of all witnesses taken by the said Master Commissioner, and the Defendant failing to appear and plead, answer or demur, and was argued by counsel.

"Upon consideration whereof, the Court, being of the opinion from the evidence that the charge of desertion of the Complainant by the Defendant as alleged in the said Bill of Complaint has been fully proven and that the desertion has been continuous from January 2, 1954, until the present time, and further that the Complainant has been an actual bona fide resident of and domiciled in Arlington County, State of Virginia, for more than one year next prior to institution of this cause, doth

"Adjudge, Order and Decree that the marriage heretofore solemnized between the said Complainant, Clarence Dudley Dillard, Colored, and the Defendant, Maryland Dillard, Colored, be, and the same is hereby dissolved and the said Complainant, Clarence Dudley Dillard, be forever divorced from the Defendant, Maryland Dillard.

"Neither Party Hereto shall be permitted to marry again for four months from the date of this decree.
"This Decree Is Final.
"James H. Raby, p.q.
"Entered: 5/14/58"

*dissolved as to any marriage subsequent to such decree, or in any prosecution on account thereof,* until the expiration of such four months \* \* \*." (Emphasis supplied.) Appellants recognize that this provision is properly read into the decree but they contend that, by its own terms, it is relevant only as to a marriage subsequent to the decree or to any prosecution on account thereof. Neither of those conditions is present in the instant case.

■ The purpose of § 20–118 is well explained by the highest court of Virginia in Heflinger v. Heflinger, 1923, 136 Va. 289, 118 S.E. 316, 32 A.L.R. 1088.[5]

That leading case demonstrates that the statute was the result of a considered public policy, enacted into law in 1919, to discourage the practice of entering into another marriage shortly after the issuance of a Virginia divorce decree. To discourage this, each party to the divorce was expressly prohibited from marrying again for six months from the date of the decree. In 1944 the six-month period was reduced to four. It was recognized, however, that although this express prohibition would be effective in Virginia, it would not be effective against a subsequent marriage promptly consummated under the law of another State.[6] To forestall such an evasion, a

5. "Section 5113 of the Code [now § 20–118], as stated above, is a new statute, introduced into the statute laws of the State for the first time in the Code of 1919. There must have been a reason for its introduction, and, as the language used is different from that of the statutes of other States on the subject, which had been construed by their appellate courts, we may safely assume that the revisors had some knowledge of those statutes and of the construction placed upon them, and intended to propose to the legislature, and that the legislature in enacting it intended to enact, something different from the statutes of those States. That section declares that 'neither party shall be permitted to marry again for six months from the date of such decree.' That was a common provision of such statutes, and it was often, if not generally, held that it simply imposed a penalty on the offending party, and did not affect the validity of the second marriage outside of the State if the said marriage were valid in the latter State. But the statute did not stop here, it went further and declared, 'and such bond of matrimony shall not be deemed to be dissolved as to any marriage subsequent to such decree \* \* \* until the expiration of such six months.' As to any subsequent marriage, there was no divorce." 136 Va., at pages 303–304, 118 S.E., at pages 320–321.

See also the following amplification of the background of § 20–118:

"It is a matter of common knowledge that one of the frequent causes of divorce was the desire of one of the parties to marry another, and as this could be done immediately upon a decree for divorce, there was a temptation to secure the divorce by collusion in fraud of the law. In order to remove this temptation, or avoid its effect, and to protect and preserve the existing marriage, section 5113 of the Code was enacted. This was a distinct declaration of public policy on the part of the State, which it had the right to enforce upon the parties to this suit, notwithstanding the marriage in Maryland. \* \* \* The object of the statute was not merely to impose a penalty on the offending party, but to declare an incapacity on each of the parties to enter into a marriage contract with another, at any place, within six months. It was to hold the first marriage intact and undissolved *as to subsequent marriages* for six months from the date of the decree." (Emphasis supplied.) 136 Va., at page 308, 118 S.E., at page 322.

Other references to the effective date of the decree also are to be read in their context and therefore in relation to subsequent marriages. See 136 Va., at pages 309–310, 118 S.E., at pages 322–323, and In re Estate of Ticknor, 1864, 13 Mich. 44, 52, quoted with approval in Simpson v. Simpson, 1934, 162 Va. 621, 634, 175 S.E. 320, 326, 94 A.L.R. 909.

6. " \* \* \* This statement of the law accords with the general judicial conception of statutes providing for absolute divorce with a prohibition against future marriage of the guilty party. Such prohibitions in no way limit absolute dissolution of an existing marriage as to both parties. They merely impose a *personal penalty* upon the offender, which has no extraterritorial effect, for one state will not enforce the punitive provisions of another." Oliver v. Oliver, 1950, 87 U.S.App.D.C. 334, 336, 185 F. 2d 429, 431. See also Loughran v. Loughran, 1934, 292 U.S. 216, 223, 54 S.Ct. 684, 78 L.Ed. 1219.

further clause was added. It provided that *as to any marriage subsequent to the decree, the decree would not dissolve the bond of matrimony for six months.*

In the Heflinger case the husband obtained a Virginia divorce on the ground of desertion and 18 days later attempted to marry in Maryland. The Maryland marriage was held to be void because the divorce in Virginia had not yet dissolved the existing bond of matrimony as to any subsequent marriage. In its exposition of the legislative history of this Act, the Supreme Court of Appeals of Virginia, in the Heflinger case, limited its discussion to the above purpose of the Act, and incidentally disclosed its view that the divorce decree was effective forthwith in absolving the parties from many of the obligations imposed by their existing marriage. It said:

"The 'bond of matrimony' created by the first marriage was not dissolved so as to permit another marriage. The parties to the first marriage *were absolved from many of the obligations imposed by that marriage,* but not from the obligation to refrain from marrying another during the six months. *As to this obligation,* they continued to be husband and wife for six months from the date of the decree for divorce, and neither could lawfully intermarry with another." (Emphasis supplied.) 136 Va., at page 304, 118 S.E., at page 321. See also 6 Michie's Jurisprudence, Divorce and Alimony (1949), § 45.

The legislative limitation of the statutory suspension of the effective date of the decree of divorce *as to subsequent marriages* amounts to a legislative exclusion of a like suspension for other purposes. *Expressio unius est exclusio alterius.* The statute makes the decree a provisional one as to a subsequent marriage but leaves it final for other purposes. If the Virginia legislature had the purpose of postponing for several months the effective date of the dissolution of all marriage obligations when granting an absolute divorce, nothing would have been easier than to say so in this statute.[7]

The difference in state policy between the narrow Virginia policy of postponing the effective date of a Virginia divorce decree solely in relation to subsequent marriages, and the broad policy now sought by appellee, is demonstrated by a comparison of the Virginia statute with the District of Columbia statute. The latter adopts and clearly expresses the broad policy of postponing for six months, and for all purposes, the effective date of any decree of absolute divorce granted in the District of Columbia. To accomplish this the District statutes provides:

"No final decree annulling or dissolving a marriage shall be effective to annul or dissolve the marriage until the expiration of the time allowed for taking an appeal, nor until the final disposition of any appeal taken, and every final decree shall expressly so recite. Every decree for absolute divorce shall contain the date thereof and no such final decree shall be absolute and take effect until the expiration of six months after its date." D.C.Code 1951, § 16–421.

Referring to the above provision in the District of Columbia statute this Court has said:

"It imposes no personal prohibition or restriction against future marriage by either party to a divorce. It deals only with divorce as such, and declares that no decree

---

7. A comparable result has been reached elsewhere, under different statutes.

"As to that matter [subsequent remarriage] the decree does not become absolute or take effect until six months shall elapse, but since the parties are repressed in respect to no other prerogative, every other result of a complete dissolution of the marriage follows at once." Durland v. Durland, 1903, 67 Kan. 734, 742, 74 P. 274, 277, 63 L.R.A. 959. See also In re Smith, 1894, 2 Okl. 153, 37 P. 1099.

therefor 'shall be absolute and take effect until the expiration of six months after its date.' This contemplates a provisional decree of divorce only, which cannot mature and become effective until lapse of the intervening time." Oliver v. Oliver, 1950, 87 U.S.App.D.C. 334, 336, 185 F.2d 429, 431.

Appellee relies upon the Heflinger and Oliver cases but the issue in those cases related only to remarriage. Each emphasized the effect of the suspension of the divorce decree as to a subsequent marriage entered into outside of the divorcing state, and did not discuss the effective date of a Virginia decree of absolute divorce in a case not involving a subsequent marriage of either of the divorced parties.[8]

The Virginia statute has not been authoritatively interpreted as having the effect of the District of Columbia statute which makes all decrees of absolute divorce interlocutory decrees. Under Rule 2:22 of the Supreme Court of Appeals of Virginia, all final decrees remain under the control of the trial court and subject to be modified or vacated for 21 days after the date of entry. In the instant case that time expired June 4, 1958—more than a month before the death of the insured—and has no effect on the issue before us.

■ For the reasons stated above, we conclude that the decree of absolute divorce, which was issued May 14, 1958, and not appealed, took effect, for the purposes of this case, before the death of the insured. Appellee, accordingly, was no longer the wife of the insured when he died, and was not entitled, as his widow, to receive the proceeds of the insurance on his life. This leaves appellants entitled to such proceeds by virtue of § 20–118 of the Virginia Code.

The judgment of the District Court, accordingly, is reversed and the case is remanded to it for further proceedings not inconsistent with this opinion.

Reversed and remanded.

On Motion for Modification of Judgment

PER CURIAM.

Application has been made for modification of judgment in the above cause to permit appellee to pursue her remedy to set aside the divorce involved, on the basis that the divorce was procured by fraud in that the deceased husband was not a bona fide resident of the State of Virginia at the time he filed the suit for divorce.

■ The appeal in this case was from motion for summary judgment granted against appellant. Appellee, never conceding that the divorce was valid, pitched her motion for summary judgment on the premise that the divorce obtained by the decedent was simply an interlocutory judgment, with which position we disagreed.

In our opinion of January 28, 1960, we remanded the case to the District Court for further proceedings not inconsistent with the opinion. This remand encompasses the right of appellee to proceed to a trial of the case on the issue as to fraud. Our opinion did not finally dispose of the case. It simply held that the granting of the motion for summary judgment against appellant was in error.

Under these circumstances, no need seems to exist for modification of the judgment and the same is accordingly denied.

---

8. Decisions such as Oliver v. Oliver, supra, and Wesley v. Brown, 1952, 90 U.S. App.D.C. 351, 196 F.2d 859, that contain language treating a decree of absolute divorce as provisional, are based upon the District of Columbia statute which expressly makes all such decrees provisional for six months. Accordingly, they provide no guidance in the instant case arising under a Virginia statute.