·No. 14,274·

Doty v. Doty
(92 P. [2d] 326)

The following dissenting opinion was filed May 15, 1939.   For majority
opinion see 103 Colo. 543, 88 P. (2d) 573.

Mr. Francis E. Bouck, dissenting.

I respectfully dissent.

This court, I think, has invaded the exclusive province of a coordinate branch of the state government by an implied judicial repeal of certain regular enactments of the General Assembly; first by ignoring the provisions of the Colorado Code of Civil Procedure relating to the dismissal of cases, and, secondly, by disregarding an unambiguous 1933 act ('35 C. S. A., vol. 2, c. 56, §13) intended to deal with the subject of divorce so as successfully to obviate legal objections which this court had previously sustained to prior legislation touching the same subject.

On the present record, as finally viewed in the majority opinion which was substituted when disposing of the petition for rehearing, the only material question left before the court was, Did the district court commit reversible error by denying the plaintiff wife's motion to dismiss her action for divorce?—a motion which, though filed with the clerk during the last month of the six-month period following the entry of the interlocutory decree, was not argued before the court or disposed of until after the expiration of that period, and consequently after the interlocutory decree had automatically, by the express terms of the 1933 act, become final; a fact which was entirely overlooked by the majority opinion.   This court, speaking for four of its seven members, has nevertheless answered the above question by "yes" and re-

versed the judgment of the court below, while three members are of the opposite opinion. I submit that the minority is right. The majority opinion advances no substantial argument in support of its decision, as I shall show.

I.

As to the failure to enforce the Code of Civil Procedure, the Code clearly prescribes the conditions permitting dismissals of cases otherwise than on the merits. To avoid misunderstanding I quote in full:

"An action may be dismissed or a judgment of nonsuit entered, in the following cases:

"First—By the plaintiff himself, at any time before trial, upon the payment of costs, if a counterclaim has not been made. If a provisional or ancillary remedy has been allowed, the undertaking shall thereupon be delivered by the clerk to the defendant, who may have his action thereon.

"Second—By either party, upon the written consent of the other.

"Third—By the court, when the plaintiff fails to appear on the trial, and defendant appears and asks for the dismissal.

"Fourth—By the court, when upon trial, and before the final submission of the case, the plaintiff abandons it.

"Fifth—By the court, upon motion of the defendant, when, upon the trial, the plaintiff fails to prove sufficient case for the jury. The dismissal mentioned in the first two subdivisions shall be made by an entry in the clerk's register. Judgment may thereupon be entered accordingly." S. L. 1887, p. 149, §166, '35 C. S. A., vol. 1, p. 276, Code §184.

Again I quote in full: "In every case, other than those mentioned in the last section, the judgments shall be rendered upon the merits." S. L. 1887, p. 150, §167, '35 C. S. A., vol. 1, p. 283, Code §185.

Inasmuch as the husband in the case at bar not only entered denials of the charges made against him by the

plaintiff's wife, but also filed a counterclaim, or cross complaint, under '35 C. S. A., volume 1, pages 125, 134, Code sections 62, 63, alleging a cause of action against the wife and asking for a divorce, it is obvious that the first subdivision of the above quoted section 184 could not apply. The absolute right of dismissal which the wife could legally exercise after filing her complaint vanished when the cross complaint was filed. '35 C. S. A., vol. 1, p. 282, Code §184, annotation IV. Compare: Denison, Code Pleading in Colorado, p. 592, §812.

There is no other code or statutory provision known to me under which the wife here could lawfully have obtained a summary ex parte dismissal, as was attempted by her mere motion without assigning any ground whatever. In Colorado a litigant's capricious desire to undo what he or she has induced the court to do cannot, as a matter of arbitrary personal privilege, lawfully supersede and nullify a court's order or judgment even in a divorce case. So I find no justification anywhere in Colorado law or procedure for this court's peremptorily reversing the trial court's denial of the motion to dismiss. It seems that the majority opinion has overlooked all the pertinent statutes.

## II.

What non-statutory source of authority, then, in the absence of power granted by a code or other statutory provision, can this court claim for vesting a divorce litigant with the unusual right of annihilating, without assignment of a single rational ground, the judicial acts performed at his or her instance by a trial court which by the exercise of its official discretion has declined to recognize such a right?

Reading the majority opinion, we learn that the tremendous power, therein assumed, to overrule tacitly the affirmative provisions of the statutes—which everybody is presumed to know—and to reverse deliberate judicial action of the court below, purports to be based upon alleged decisions of this court.

Before discussing those decisions, I shall quote from the 1933 divorce act the following provisions, which are radically different from the provisions involved in the four cases cited by the majority opinion, and which, moreover, are not only plainly decisive in the case at bar, but have been actually so interpreted by this court in cases which I cite later on:

"Within forty-eight (48) hours after return of a verdict by a Jury, if the case has been tried to a Jury, or within forty-eight (48) hours after the close of the trial of a case, if tried to a Court, or within forty-eight (48) hours after the denial of a motion for a new trial, if a motion for a new trial has been filed, the Court shall enter, if no divorce is to be granted, a judgment or decree dismissing the action. If, however, a divorce ought to be granted, the Court shall enter an interlocutory decree, providing that the parties to such action shall be divorced six (6) months after the date of such interlocutory decree. During such six (6) months period the parties shall not be divorced and neither party shall contract another marriage during such period. During such period the Court may, upon motion or petition of either party to the action, or upon its own motion, for good cause shown after a hearing, set aside such interlocutory decree. Such interlocutory decree shall be a final order as of the date of its entry.

"Appeals from the County Court to the District Court and writs of error to the Supreme Court shall lie as in all other civil cases.

"Six (6) months after the entry of an interlocutory decree, it shall be and become a final decree of divorce, unless such interlocutory decree shall have been duly set aside, or an appeal has been taken, or a writ of error issued. No other decree shall be needed or required but the Court may enter any other decrees or orders in such action which it may deem proper." S. L. 1933, pp. 440, 441, §§1, 2, 3, '35 C. S. A., c. 56, §§13, 16, 17.

Of the four cases cited by the majority opinion in

support of its conclusion, the most recent one is *Walton v. Walton,* 86 Colo. 1, 278 Pac. 780, decided in 1929. It involved the 1925 divorce act, which, by requiring the court "to grant a divorce to the party entitled thereto upon the application or motion of either party to said suit or action," was entirely different from that of 1933, involved here. The Walton case cites the other three, decided respectively in 1880, 1889 and 1909. Like the Walton case itself, none of these three involved a single point arising in the case at bar.

However, since the majority opinion requotes from the Walton case extensive passages from the 1909 opinion in *Milliman v. Milliman,* 45 Colo. 291, 101 Pac. 58, in order to sustain its own decision, it behooves me to point out the facts as they existed in the Milliman and Walton cases.

In the Milliman case the husband had sued the wife for a divorce. She filed an answer denying his charges and in turn charging him with cruelty, but without seeking a divorce herself. In her absence her attorney obtained leave from the court to amend her answer so as to ask for a divorce. The amendment was not made. The jury found the husband guilty of cruelty and the wife not guilty. She promptly repudiated her attorney's unauthorized action in obtaining leave to amend, but the court held her to the amendment which had never been effected, and a divorce decree—which she had not requested and against which she consistently protested—was entered. The decision of this court, setting aside a decree entered in the circumstances stated, was manifestly sound. Unfortunately the all too broadly phrased dictum quoted by the majority opinion has ever since been misinterpreted and misapplied. That was done in the Walton case, supra, and in the case at bar.

Considering next the case of *Walton v. Walton, supra,* we find that no question of dismissal was involved there either. Nor was there a question of opposing causes of action on behalf of the two spouses, that is, the question

of an ex parte dismissal being prevented by pendency of a counterclaim did not enter; for the plaintiff husband there deliberately abandoned his complaint and the trial proceeded on the cross complaint of the defendant wife, who prevailed and procured findings of fact and conclusions of law, which she later moved to set aside. The reversal was expressly on the ground, as stated by this court, "that in so far as the amendatory act of 1925 attempts to empower and direct the court to issue its decree upon application of the guilty party to a divorce action, and only so far, it is not only against public policy, but is unconstitutional."

In *Morris v. Propst,* 98 Colo. 213, 216, 55 P. (2d) 944, this court, after discussing the divorce acts preceding the 1933 act, said: "It is evident that the quoted statute gives interlocutory decrees the full sanction accorded to judgments. By the express language used, the mere lapse of time transmutes an interlocutory decree into an absolute or final decree without any further action of the court. The decree thus becomes a real decree, whether it be called interlocutory or final."

In *Kastner v. Kastner,* 98 Colo. 263, 55 P. (2d) 947, the opinion of Mr. Justice Hilliard, in which Mr. Justice Burke and Mr. Justice Butler concurred, suggests no doubt as to the constitutionality or validity of the 1933 act. Had there been any room for doubt, surely this court, remembering that "the state is a party to every divorce action," would have expressed it. It is clear that the General Assembly, by establishing the automatic efficacy of the interlocutory decree as a final decree at the end of a six-month period, fully satisfied the most liberal public policy for supplying an opportunity to set aside the interlocutory decree if there were the slightest prospect of resumption of the marital relation. The record in the case at bar contains the uncontradicted testimony of both spouses that reconciliation is impossible.

In *Walton v. Walton, supra,* it was said (at page 14): "We are not unmindful of the fact that ultimately the

question of public policy is for the legislature. When that policy is unequivocally declared the declaration binds the courts.'' Surely the General Assembly could not have spoken more clearly on the subject than it did in the divorce act of 1933.

The court below denied Mrs. Doty's motion to set aside the interlocutory decree. She assigned no reason except her own personal preference not to be given a final decree. The trial court could not conscientiously do other than deny that motion. This judicial act is unassailed except by the belated motion to dismiss the case, which I have shown to be ineffectual.

There is but one consolation left herein for the husband and for the members of the bar: Under rule 5 of this court, the dismissal which this court now persists in effectuating contrary to the solemn action of the district court is a dismissal *with prejudice,* and the matters that were litigated in this case cannot be litigated again.

This dissenting opinion was intended to be published in the official reports in direct connection with the majority opinion. Owing to illness the writer was unable to complete the opinion as early as he wished, but it is now filed this 15th day of May, 1939, and will be printed in volume 104 of the Colorado Supreme Court reports.