L. S. WOOLVERTON, *as Executor, etc.*, v. WILLIAM JOHNSON *et al.*

No. 13,760.   (77 Pac. 559.)

SYLLABUS BY THE COURT,

1. PRACTICE, SUPREME COURT—*Agreed Statement of Facts Not in the Record.* An agreed statement of facts upon which a trial is had cannot be made a part of the record by inserting it in the journal entry of judgment preceded by the recital that the court made such agreed statement its findings of fact.

2. ——— *Extent of Review in the Absence of Agreed Facts.* Where a case is tried upon an agreed statement of facts, and is brought to this court for review upon a record which does not include it, notwithstanding such omission an inquiry may be had into the question whether the judgment was warranted under the pleadings.

3. DESCENTS AND DISTRIBUTIONS— *Construction of Will—Disposition of Trust Fund.* A will directed that the property of the testator be sold and the proceeds placed with trustees, to be expended by them for the support and education of her two minor children. It was fairly inferable that the trust was to end when the children became of age, but no provision was made for the

payment to them of any surplus that might then remain. From the apparent value of the estate it was reasonable to believe that the testator assumed that if the children, or either of them lived to the age of twenty-one, its proceeds would be exhausted before that time. The will concluded with the words "and in the event of the death of each of said children, Donald Johnson and Kenneth Johnson, that in such an event the residue of my estate, whatever it may be, I give and bequeath to my brother, John Olson." Kenneth Johnson died before his mother's death, Donald shortly after. *Held*, that the unexpended portion of the estate goes to the testator's brother, and not to the heirs of Donald Johnson.

Error from Shawnee district court; Z. T. HAZEN, judge. Opinion filed July 13, 1904. Reversed.

*W. F. Schoch, F. G. Drenning*, and *L. S. Woolverton*, for plaintiff in error John Olson.

*Troutman & Stone*, for defendants in error.

The opinion of the court was delivered by

MASON, J. : On January 18, 1901, Jennie Johnson was granted a divorce from her husband, William Johnson. On June 5, 1901, she made a will, the general purpose of which was that her property should form a fund for the education and maintenance of Donald and Kenneth Johnson, the two minor children of herself and William Johnson. Kenneth Johnson died before the death of his mother. She died July 17, 1901. Donald Johnson died intestate March 15, 1902. This litigation involves the question of the disposition of the property left by Mrs. Johnson, and its result turns principally upon the construction to be placed upon her will. The trial court sustained the contention of William Johnson that, as Mrs. Johnson died within six months of the date of the divorce, he was still her husband at the time of her death, and was entitled to one-half of the property in virtue of

that relation; and that he was entitled to substantially all of the other half as the sole heir of his son, Donald Johnson, who had acquired an absolute title thereto under the will. John Olson, one of the plaintiffs in error, a brother of Mrs. Johnson, contends that by the terms of the will all of the property then unconsumed (except for a small specific legacy) passed to him upon the death of Donald Johnson.

A preliminary question arises upon an objection to the sufficiency of the record to present any question for review. The case was heard upon an agreed statement of facts and is brought here by transcript. The transcript includes what purports to be a copy of the agreed statement, but, as that was not incorporated in a bill of exceptions and did not become a part of the record, it is not properly before us and cannot be considered. (*Patee v. Parkinson*, 18 Kan. 465, *Morrow et al. v. Comm'rs of Saline Co.*, 21 id. 484, 515, *Myers v. Wheelock*, 60 id. 747, 57 Pac. 956; *F. C. Austin Mfg. Co. v. Johnson*, 89 Fed. 677, 32 C. C. A. 309.) An attempt has been made to remedy this defect by adding to the transcript the copy of an order recently made by the district court amending the entry of judgment by inserting therein *nunc pro tunc* the agreed statement, preceded by a recital that the court made such statement its findings of fact. Apart from any question of the time of such attempted correction, we do not think the agreed facts can be brought upon the record in this manner. A trial court cannot make findings of fact different from those agreed to by the parties. (*Brown v. Evans*, Adm'r, 15 Kan. 88; *Gray v. Crockett*, 30 id. 138, 148, 1 Pac. 50.) When a cause is submitted upon an agreed statement all issues of fact are eliminated. (*Richie v. K. N. & D. Rly. Co.*, 55 Kan. 36, 50, 39 Pac. 718; *Atkins v. Nordyke*, 60 id. 354,

56 Pac. 533.) There was, therefore, no occasion for any findings of fact. Having no function to perform, they are of no effect if made. What the court does under such circumstances is to apply the law to the facts as agreed to by the parties. To describe this operation of the mind as including an adoption of the agreed statement as findings of fact does not change its character, nor authorize the agreement to be made a part of the record by being spread upon the journal.

But the somewhat exceptional circumstances of this case, these considerations do not preclude a review of the important questions involved. This litigation was begun April 17, 1902, by a petition filed by L. S. Wolverton, the executor and trustee under the will, asking the direction of the court concerning the disposition of the property in his hands. All persons having any interest were made parties. On November 20, 1902, Olson filed an answer and cross-petition, in which he set out the facts upon which his claim was based, attaching complete copies of the will and the decree of divorce. On December 6, 1902, Johnson filed an answer to the petition and a motion to strike matter from the answer and cross-petition of Olson. This motion appears never to have been passed upon, and there was no further pleading on the part of Johnson. He filed no answer to the cross-petition of Olson, between whom and himself the real controversy lay, none of the other parties having any personal interest in the result. It is only applying the ordinary rules of pleading to hold that the allegations of Olson's cross-petition were admitted by Johnson's failure to deny them. The record, therefore, fairly presents the question whether the judgment of the court is consistent with the allegations of Olson's

cross-petition and with those of the answer of John-
son to the petition of plaintiff.

The agreed statement is only the equivalent of evi-
dence and cannot change the issues presented by the
pleadings. (*Comm'rs of Marion Co. v. Comm'rs of
Harvey Co.*, 26 Kan. 181; *Myers v. Wheelock*, supra.)
And no matter what the agreed statement may have
contained, the judgment cannot stand if it is incon-
sistent with the uncontradicted facts as disclosed by
the pleadings. It is true that where a case is de-
cided upon an agreed statement of facts defective
pleadings will ordinarily be considered as having
been corrected by amendment, in order that sub-
stantial justice may not be defeated by inadvertent
omissions. (*Reynolds v. Reynolds*, 30 Kan. 91, 96, 1
Pac. 388.) If the agreed statement were properly be-
fore us, and it appeared from that and from the judg-
ment that the parties and the court had proceeded as
though Johnson had denied the allegations of Olson's
cross-petition, or had set out new matter affecting
them, justice would not only permit, but require, that
the case be treated as though such denial had in fact
been made, and as though Johnson had pleaded any
new matter conforming to the agreed statement neces-
sary to sustain the judgment. But it is evident from
his answer to the petition that there was no material
controversy except as to the divorce and the will, and
that there was no serious intention on his part of dis-
puting the terms of these as alleged by Olson; that
they were practically admitted, and that the only dis-
agreement concerned their legal effect. The conclu-
sions of law framed by the court were directly
responsive to the very questions raised by the plead-
ings as they stood. There is nothing in any aspect of
the affair to justify indulging in strained inferences

in Johnson's behalf lest an injustice be done him. To give him now the benefit of a pleading which he did not file would not be promoting justice ; it would be aiding a technical objection to an inquiry into the legal merit of a claim barren of equity.

The claim of Johnson to a part of the property in virtue of having been Jennie Johnson's husband at the time of her death, on the theory that the decree of divorce did not have the effect of severing the marital relation of the parties until the expiration of six months, is disposed of by the interpretation given the statute in *Durland v. Durland*, 67 Kan. 734, 74 Pac. 274, 63 L. R. A. 959, decided since the judgment in this case was rendered.

The will declared in a preamble that the testator was desirous of making provision for the custody, education and keeping of her minor children.   It directed the appointment of John Olson, L. S. Woolverton and Mrs. Emma Rhodes their guardians, and made the same persons trustees of her estate, to receive its proceeds and expend them in the care, maintenance and education of the children.   Her household goods were given to Mrs. Rhodes, to be used for the comfort of the children.   Apart from this property and a life-insurance policy of something less than $1000, the estate consisted of the half-interest in a house and lot in Pueblo, which were directed to be sold.   It was recited that Olson had agreed to furnish a home for the children and for Mrs. Rhodes. Provision was made for replacing any of the trustees who might die before the children became of age. The entire controversy turns upon the interpretation to be placed upon the concluding paragraph of the will, which reads as follows :

"It is my will, and I further direct, that in the

event of one of my sons should survive the other, that the surviving son shall have and receive all the property belonging to them jointly or otherwise, and in the event of the death of each of said children, Donald and Kenneth Johnson, that in such an event the residue ˜f my estate, whatever it may be, I give and bequeath to my brother, John Olson.''

In Olson's behalf it is argued that the will created only a life-estate in the children, with a remainder over to him. Such a construction involves great difficulties, one of them being the requirement that the phrase ''in the event of'' the death of the children be deemed the equivalent of ''upon'' their death. Although there is no direction that any of the property ever be turned over to the children, the provision for replacing any trustee who may die before their majority points to an assumption that the trust would then cease, and may justify an inference that any surplus remaining was then to be paid to them. Had the testator intended the property to be held in trust for her children after they become of age, and for the entire period of their lives, it is reasonable to suppose that language would have been selected more clearly expressive of so singular a purpose.

On the other hand, the contention urged by Johnson and adopted by the trial court is that Olson was to take the property only in the case of both children's dying before their mother, and that either child surviving her was to take an absolute title, capable of descending to his heirs upon his death. The argument in favor of this view is based chiefly upon the circumstance that the death of the children is spoken of as a mere contingency. Inasmuch as it cannot be supposed that any one regards death as otherwise than certain to occur at some time, it is the usual and just presumption that whenever a testator refers to it

as something that may or may not happen, he has in mind, not whether it will occur, but when it will occur—for instance, whether before or after some other event; and where a will directs something to be done *if* some person die, in the absence of anything to suggest a different theory, it is natural to assume that the testator means that it is to be done if such death take place before his own, because that explanation presents itself readily and naturally. Upon this reasoning, it is said in Jarman on Wills (Randolph & Talcott's edition), volume 3, page 606:

"Hence it has become an established rule, that where the bequest is simply to A, and *in case of his death, or if he die,* to B, A surviving, the testator takes absolutely."

But it is further said in the same discussion (at pages 611, 612):

"But although in the case of an *immediate* gift, it is generally true that a bequest over, in the event of the death of the preceding legatee, refers to that event occurring in the lifetime of the testator, yet this construction is only made *ex necessitate rei,* from the absence of any other period to which the words can be referred, as a testator is not supposed to contemplate the event of himself surviving the objects of his bounty; and, consequently where there is another point of time to which such dying may be referred (as obviously is the case where the bequest is to take effect in possession at a period subsequently to the testator's decease), the words in question are considered as extending to the event of the legatee dying in the interval between the testator's decease and the period of vesting in possession. . . . On this principle, too, it should seem that in the case of a bequest to A at the age of twenty-one years, *and in the event of his death* then over to another, the words would be construed to mean, in the event of his dying under twenty-one at any time."

And in *Armistead v. Hartt,* 97 Va. 316, 318, 33 S. E. 616, it was said :

"The words 'in the event of' import a contingency, and must refer to death before some period or event contemplated by the testatrix, but not expressed ; for, otherwise, they would be useless and meaningless, as there is no contingency about death, nothing being more certain to happen. There is no express designation in the will nor is there anything in its language to indicate the period or event to which these words refer, and since they must be given some effect, they must be construed as having reference to that period or event which, under the circumstances, is the most natural."

In volume 1 of Underhill on Wills, section 342, it is said :

"Where the death of the legatee can, from the character of the disposition which is made in case of death, be referred to another period than the life of the testator, the court will not hesitate so to construe it. Accordingly, when the gift to the primary beneficiary is after a life-estate, in express terms, or where a legacy is to vest in legatees *when they are twenty-one years of age,* and apparently where payment only and not vesting is postponed, with a gift over in case of the death of a legatee, the term will be taken to mean death at any time, either *before or after* the death of the testator."

It may be that the present problem could be properly solved in accordance with the last suggestion by considering that the bequest to the children would become absolute upon their reaching twenty-one years of age, and that the devise to Olson was intended in case they should die before that time, but a more plausible solution presents itself. The important inquiry in an effort to reach the intention of the testator is, Of what was she thinking? What had she in mind as likely to happen before the death of her children? The an-

swer may be sought not merely in the language of the will, but in all the conditions existing when the will was drawn. In *Cowley v. Knapp*, 42 N. J. L. 297, a disposition of property indicated in case of the death of the testator and her husband was held to have reference to their death while upon a journey they were about to undertake when the will was drawn. In the opinion it was said : "Her mind was upon the travels abroad, for which she and her hus-band were preparing, and her purpose was that if, in the course of those travels, death should overtake them, then this will should be operative. This was the contingency which led her to speak of their death as a thing which might or might not happen." ( Page 304.)

In the present case it is to be noted that the only property available for the support of the children, apart from the insurance money and the household goods, was the Pueblo real estate. The value of this was not shown, the plaintiff placing it at $2000, and John-son asserting that it was greater. Obviously Mrs. John-son did not think it of a character to yield an income sufficient for the support of the children, or she would not have ordered it sold. One of the children was a mere infant. It is clear that she realized that she was not leaving sufficient property for the care, main-tenance and support of her children until they should be twenty-one years old. Her mind was upon the probability, the practical certainty, that long before that time her estate would be exhausted and they thrown upon their own resources or left to depend upon the charity of friends and relatives. And what she had in mind when she spoke of their death as a thing which might or might not happen was that it might or might not take place before that condition

should arise. If it should, there would remain a part of the property undisposed of, which in that event she wished Olson to have; if it should not, then no such bequest could be made, for there would be nothing to which it could apply. This seems a reasonable explanation which does no violence to the language used, and adapts itself to the circumstances by which the testator was surrounded. It also accounts for the will's omitting to provide for the payment to the children, at their majority, of money remaining in the hands of the trustees. No such provision was made, because it never occurred to the mother as possible that there could be any such surplus. She realized that the sum was inadequate for the purpose to which she devoted it, if the children should live to maturity, and made her arrangements accordingly.

Another consideration supporting the conclusion just stated is this: If both children had survived their mother and then one of them had died, it could hardly have been contended that his share of the property would have passed to his father instead of to his brother. And yet such a contention could be supported by the same argument as is now made in behalf of Johnson's claim. The language of the will is: "In the event of one of my sons should survive the other, that the surviving son shall have and receive all the property belonging to them, jointly or otherwise." Now it was just as certain that one of the sons should at some time survive the other as that both should at some time die, unless both should expire at the same moment, and that contingency is in the nature of things so remote that it would be absurd to imagine the testator's basing the disposition of her property upon it. It follows that the words quoted must be taken to mean either that one of the children

should take all of the property in the event the other
child should die before his mother, or that one of them
should take all the property in the event the other
should die before the property should be exhausted.
For all the reasons suggested by the preceding discus-
sion, and for others which readily suggest themselves,
we think the latter the correct interpretation. If in
the first half of the sentence the mother spoke of the
death of one son as something that might or might not
happen, because she had reference to his death before
the complete expenditure of her money, it is only
reasonable to account in the same way for the fact
that in the second part of the same sentence she spoke
of the death of both of them as an uncertainty.

This reading also accounts for the use of the word
"residue" in the paragraph quoted. Ordinarily this
word, when found in a will, is held to signify the
property of the testator the disposition of which has
not otherwise been indicated; that is, what remains
after the payment of charges and specific legacies.
It cannot well be thought to have been so used here.
There was no portion of the estate remaining other-
wise undisposed of by the will. All the property of
the testator had been given to the trustees for the
benefit of the children, excepting the household goods,
which had been given to Mrs. Rhodes, to be used for
their comfort. There was no property to which the
term could apply other than that already set apart
for the children; but it is clear that the word must
have been used to signify what remained of something
after taking away a part. Had it been the purpose to
express the wish that if the children should die before
the mother her property should go to Olson, the
language naturally selected to convey the idea would
have been to the effect that all of her estate should go

to him in that event; there would have been no occasion for the use of the word "residue," and nothing to suggest it.   But, plainly, the testator assumed that, in whatever contingency she had in her mind, only a part of the property would remain.   What, did she consider, would have become of the rest of it?   Obviously, that it would have been used up in the only way authorized by the will—by having been expended in the care, maintenance and education of the children after her death.

We adopt the interpretation indicated, and it results that John Olson was entitled to so much of the estate of Jennie Johnson as remained unconsumed.   Defendant in error, William Johnson, contends that at all events he is entitled to the unexpended portion of the proceeds of the life-insurance policy referred to, on the ground that such proceeds were never a part of the estate of Mrs. Johnson, the policy before her death having been made payable to Donald Johnson.   This contention seems well founded, although, owing to the condition of the record, we cannot be sure of the fact.   This consideration does not affect the conclusion announced. In the foregoing discussion the insurance money has been spoken of as a part of the assets of the estate, but only for the purpose of arriving at the intention of the testator, it being so treated in the will.

The judgment is reversed, and the cause remanded for further proceedings in accordance with the views here expressed.

All the Justices concurring.