## No. 13,857.

### MORRIS, ADMINISTRATOR *v.* PROPST.
(55 P. [2d] 944)

Original opinion filed January 6, 1936. On petition for rehearing, opinion withdrawn, substitute filed and rehearing denied March 2, 1936.

214

Mr. T. E. MUNSON, Mr. JOHN P. BECK, for plaintiff in error.

Messrs. SAUTER & SANDHOUSE, for defendant in error.

*In Department.*

MR. JUSTICE BOUCK delivered the opinion of the court.

THE question before us is whether the district court of Logan county erred in setting aside an interlocutory decree of divorce recovered against a husband by his wife, who died within the six months immediately following the entry of the decree.

The divorce action was begun on October 18, 1934. The husband, though duly served, did not enter his appearance and interposed no defense. On December 5, 1934, a trial was had and an interlocutory decree of divorce was entered. On January 31, 1935, the wife died.

On June 1, 1935, more than four months after the wife's death, and five months and twenty-seven days after entry of the interlocutory decree, the surviving husband filed in the divorce action as originally entitled an unverified and unsupported "motion" to set aside the interlocutory decree, said motion purporting to contain allegations of fact as follows: "This defendant further shows to the Court that on or about the 31st day of January, 1935, the plaintiff herein died at Sterling, Colorado, and that there is no reason or need for further proceedings in said cause, and that it is the desire of this defendant that the Interlocutory Decree of Divorce heretofore entered in said cause be vacated and set aside."

The trial court sustained the motion, set aside the interlocutory decree, and dismissed the case at the costs of the administrator. The specific question before us is whether there is any authority for the filing or granting of such a motion after the death of the other party.

The divorce procedure in Colorado was radically changed by S. L. '33, page 440, chapter 71. Prior thereto the General Assembly had provided that when a complaining party prevailed at a hearing on the merits there should be entered "findings of fact and conclusions of law," obviously after the manner of the procedural basis for equity decrees. But such findings and conclusions did not constitute a judgment or decree. Often, to be sure, they were inaccurately referred to even by attorneys and courts as an "interlocutory decree." Nevertheless, they had none of the characteristics of an actual judgment. True, chapter 91 of S. L. '29 (pages 327, 329) provided that at the end of six months the findings of fact and conclusions of law, unless set aside, should "operate" as a decree of divorce. By lawyers and courts generally, this phraseology was deemed inadequate to constitute a real decree.

In 1933, however, the General Assembly enacted the following:

"Section 1.   * * * If * * * a divorce ought to be grant-

ed, the Court shall enter an interlocutory decree, providing that the parties to such action shall be divorced six (6) months after the date of such interlocutory decree. During such six (6) months period the parties shall not be divorced and neither party shall contract another marriage during such period. During such period the Court may, upon motion or petition of either party to the action, or upon its own motion, for good cause shown after a hearing, set aside such interlocutory decree. Such interlocutory decree shall be a final order as of the date of its entry. * * *

"Section 3. Six (6) months after the entry of an interlocutory decree, it shall be and become a final decree of divorce, unless such interlocutory decree shall have been duly set aside, or an appeal has been taken, or a writ of error issued. No other decree shall be needed or required but the Court may enter any other decrees or orders in such action which it may deem proper." S. L. '33, chapter 71, pages 440 and 441.

It is evident that the quoted statute gives interlocutory decrees the full sanction accorded to judgments. By the express language used, the mere lapse of time transmutes an interlocutory decree into an absolute or final decree without any further action of the court. The decree thus becomes a real decree, whether it be called interlocutory or final.

This being so, we next inquire what could have been the effect of the above mentioned motion, filed by the husband after the death of his wife, to vacate the interlocutory decree which had been granted to her as the successful plaintiff.

Of course the interlocutory decree was not set aside during the six-month period. No "petition" in the accepted sense was filed by either of the original parties. An unverified and unsupported "motion" was indeed filed, as we have seen; but such a motion, in reason and under all the authorities governing in this jurisdiction, was not within the contemplation of the above quo-

tation. It was ineffectual. A motion presupposes a notice to the opposing party. Code, '21, section 407, found in C. L. '21 at page 176. That the attempt to serve notice herein upon the administrator of the wife's estate on June 20, 1935, six months and fifteen days after entry of the interlocutory decree was, for more than one reason, futile, is clear.

[5] A divorce action is a purely personal action which does not survive the death of either party, but, on the contrary, automatically abates. A seeming exception, apparent only, arises when such an action involves an issue of property. In that event, of course, the administrator must not merely be noticed into court, but he must be proceeded against as a party, either by proper substitution or in a separate action; and where the property issue is thus made, the persons interested as heirs or otherwise must be made parties and given their day in court. Those steps naturally were not taken or attempted here by the husband. In the case at bar neither the divorce pleadings nor the "motion" nor the interlocutory decree did so much as suggest a property issue. Hence the entire action abated immediately upon the death of the plaintiff wife, and no one thereafter had the right to change the record as it stood at that moment. *Holmberg v. Holmberg,* 106 Neb. 717, 184 N. W. 134. In the latter case it was a plaintiff husband who died, and his widow thereafter filed a petition to vacate the decree which had been entered against her under a statute similar to our own. The trial court denied the petition. There had incidentally been an alimony judgment, but this had been satisfied. At page 718 the court said:

"An action for divorce does not survive. The purpose of the action being to dissolve the marriage relation, and that relation being dissolved by death, the proceedings after the death of one of the parties would be useless and of no avail. Where, however, property rights are involved and a judgment for alimony or determining the separate property rights between the par-

ties has been had in the case, the cause generally will survive as to such matters. 1 C. J. 208, sec. 404; 1 R. C. L. 39, sec. 35.

"The alimony judgment having been duly entered was valid, and, as it was at once satisfied, it is at an end, and the court is without power, in a proceeding like this, to modify, vacate, dismiss, or expunge it. There is nothing there to abate or revive. * * *

"The ultimate purpose of the requested vacation of the divorce decree is to establish the defendant's property rights as the widow of the deceased plaintiff in his estate. All the avenues are open for the determination of such rights in the proper courts, where all the parties affected can be heard, and in such tribunals she can establish her status as the widow of the deceased plaintiff. *Chase v. Webster,* 168 Mass. 228 [46 N. E. 705]; *Matter of Crandall,* 196 N. Y. 127 [89 N. E. 578], 17 Ann. Cas. 874; *Estate of Seiler,* 164 Cal. 181 [128 Pac. 334], Ann. Cas. 1914B, 1093.

"The action of the district court is affirmed."

Chancellor Walker of New Jersey uses the following language: "The present petitioner [the widow of a deceased plaintiff husband] also applies to dismiss the husband's petition for divorce, but cites no authority for such a step. As I understand it, when a suit abates the record remains as the parties made and left it. The application to dismiss the original petition for divorce will be denied." *Dunham v. Dunham,* 82 N. J. Eq. 395, 400, 89 Atl. 281.

If, in analogy with the above cited Nebraska case, the defendant husband in the case at bar harbored a purpose to vacate the interlocutory decree in order to facilitate possible litigation concerning his deceased wife's property, or perhaps to give prima facie standing to a claim of the right to administer on her estate, he cannot accomplish his purpose by proceeding in the divorce case, but will be relegated to separate proceedings with proper parties and in accordance with recog-

nized legal procedure. In the absence of a property issue, the divorce case cannot be used either directly or indirectly to adjudicate what was not within the issues tendered by the uncontradicted and unanswered complaint.

In the present case, there is a special reason why the general rule should be enforced, and the surviving spouse prevented from changing the judicial record in any way. This reason appears from the administrator's "amended answer," the husband's demurrer to which, sustained by the trial court, presents the one question before us. Thereby it is shown that a contract was entered into immediately before the divorce action was instituted. In the contract, which is set out in full by the administrator, the following provisions are found: "It is hereby agreed * * * that T. K. Propst [defendant in error here] * * * shall pay to Nettie Propst [the deceased wife] * * * One Thousand Dollars * * *, which said amount is agreed to be accepted by [her] as a full and complete settlement of all property rights to which she might be entitled by reason of division of property, or otherwise, and it is understood and agreed that said payment of the sum * * * shall constitute a full and complete settlement to [her] of all rights, claims, demands or interests of any kind or character which she may now have, or which she may at any time in the future have against [him] * * * by reason of her marriage to [him]. Both parties to this agreement hereby expressly state * * * that in case at any time in the future a decree of divorce shall be granted to either of the parties hereto, that a copy of this agreement may be filed with the court in which such divorce decree is entered, and shall be considered as a full and complete adjudication of the property rights of the parties hereto." By way of amendment, it is alleged by the administrator, and the demurrer admits, "that by virtue of said agreement the defendant [husband] paid to the plaintiff [wife] the sum of $1,000 in two equal installments, the last being within one week after the inter-

220

locutory decree was entered." Certain it is that under the 1933 statute no other decree of divorce is required to be entered than the interlocutory one which in a normal situation mechanically becomes final.

We need not now decide the exact effect of this contemporaneous construction placed upon the contract by the parties themselves, apparently declaring the "decree of divorce" therein mentioned to be the aforesaid interlocutory decree; for on no other assumption can the payment by husband to wife be here reasonably explained. Suffice it to say that, since the divorce action involved no issue of property, the principle above discussed forbids the courts to do anything further therein at the instance of the surviving spouse, simply because there has been an automatic abatement of the action.

It follows from what has been said that the trial court ought not to have sustained the "motion" or dismissed the action—as it did—at the administrator's costs or at all. The judgment must be reversed with directions to the district court to overrule the husband's demurrer to the administrator's "amended answer," to reinstate the interlocutory decree of divorce, and to deny the husband's motion for setting aside the interlocutory decree and for dismissing the case.

The original opinion herein, which also read for reversal, is withdrawn, and the present opinion is hereby substituted therefor.

Judgment reversed with directions.

Mr. Justice Butler (who at the announcement of the original opinion was Chief Justice) and Mr. Justice Holland concur.