No. 34,748

JOHN H. KNOLLENBERG et al., *Appellees*, v. ALMA KNOLLENBERG MEYER, *Appellant;* THE WHEELER-KELLY-HAGNY TRUST COMPANY, *Appellee.*

(100 P. 2d 746)

Opinion filed April 6, 1940.

*James B. Nash* and *Robert R. Hasty,* both of Wichita, for the appellant.

*Robert C. Foulston, Lester L. Morris, John F. Eberhardt,* all of Wichita, for appellee The Wheeler-Kelly-Hagny Trust Company; *John Madden, Jr.,* and *Howard C. Kline,* both of Wichita, for appellees John H. Knollenberg et al.

The opinion of the court was delivered by

SMITH, J.: This was an action under the declaratory-judgment statute to construe a will. Judgment was rendered in favor of the plaintiffs, certain children and grandchildren of the testator. The widow of testator appeals.

After alleging the relationship of the plaintiffs, the petition alleged that the action was brought under the declaratory-judgment statute;

that on July 26, 1928, testator made his will, and that his widow consented thereto; that on May 5, 1935, testator died and on the 14th of May, 1935, his will was admitted to probate and the Wheeler-Kelly-Hagny Trust Company was appointed executor; that on December 10, 1937, the estate was closed and since that time the trust company had been acting as trustee. The petition then set out a paragraph of the will as follows:

"I direct that my executor, or/and trustee, hereinafter named, shall from my estate, or/and if after said property shall have been conveyed and transferred to the Wheeler-Kelly-Hagny Trust Company, as trustee, then from any property in the hands of said trustee, pay to my widow, Alma Knollenberg, the sum of one hundred dollars ($100) per month, payable monthly in advance and beginning immediately upon my death. Said sum of one hundred dollars ($100) a month shall be paid to my said widow from month to month during her natural life, provided she shall remain my widow. *Provided, further,* That should the said Alma Knollenberg remarry, then all such payments shall end and cease. It is my will that this provision shall not prevent the closing of my estate and the transfer of the rest and residue of my property to the Wheeler-Kelly-Hagny Trust Company, but the right hereby bequeathed to the said Alma Knollenberg shall continue as the obligation of my trustee from all properties herein transferred to it, or/and properties which it may have subject to this provision."

The petition further alleged that on December 8, 1938, Alma Knollenberg married one Meyer; on December 15, 1938, Meyer died; that the plaintiffs were all beneficiaries under the trust created by the will; that the trust company refused to make distribution until defendant would waive all rights to the trust fund; that she refused to waive these rights and claimed an interest in such fund to the extent of $100 a month. The plaintiffs ask that judgment be entered that defendant Alma Knollenberg Meyer had no interest of any kind in the trust fund. A copy of the will was attached to this petition. The only paragraph, however, with which we are concerned has already been quoted. The consent to the last will and testament signed by Alma Knollenberg, wife of Gerhard Knollenberg, under date of July 26, 1928, was attached to the petition. The trust company in its answer set out the provisions of the will about the $100 a month to be paid Alma Knollenberg Meyer; admitted that it was trustee under the will; that it refused to continue the payments of $100 a month to Alma because it was of the opinion that she was no longer entitled to it after she remarried; and that the plaintiffs had made demand on it for payment to

them pursuant to the trust. The court was asked to direct it as to how it should proceed to perform its obligation under the trust.

Alma answered, admitting the relationship of the plaintiffs; that the will contained the items set out in the petition; that she married Meyer on December 8, 1938, and that plaintiffs are the beneficiaries under the trust and that on July 26, 1928, Knollenberg made his will. She denied, however, that when he executed the last will and testament she was the lawful wife and consented to the will as the lawful wife. She admitted that she signed what purported to be a consent, but denied that it had the effect of consent for the reason that prior to the marriage of Knollenberg she was the lawful wife of one Barnholdt, from whom she was divorced on June 16, 1928, and that on July 25, 1928, she and Gerhard, while acting in good faith, attempted to enter in a marriage ceremony at Newkirk, Okla. She then denied that there was any occasion to interpret the will of Knollenberg and she admitted that the trust company was trustee under a certain trust agreement, but denied that it had any right to dispose of certain property described. She denied that her marriage to Meyer had any effect on the interest in the property described. She stated she did not know whether the plaintiffs were demanding a final distribution under the trusteeship, but stated that if they were such fact did not change her rights. The answer then made the following allegation:

"This defendant alleges that during all the time from July 25, 1928, to the death of Gerhard Knollenberg, that in good faith and under the honest belief that they were lawfully married, they cohabited, lived together and held each other out to the public as husband and wife, by reason of which fact, this defendant became, remained and now is, the common-law wife of Gerhard Knollenberg, but did not discover her full rights under the fact until on or about the 22d day of June, 1939, immediately prior to the filing of this answer. That by reason of the fact and a knowledge of her rights thereunder, this defendant makes claim to an undivided one-half interest in and to the estate of Gerhard Knollenberg, deceased."

For her cross petition she alleged that she and her husband were residents of Kansas during all the times material to this action; that all the property described in her cross petition was acquired during the period of time from July 25, 1928, when the marriage ceremony took place in Oklahoma to the date of the death of testator and while he and defendant were living together as husband and wife. Her cross petition then alleged that she had never made a widow's election to take under the will of Knollenberg, but had,

without being advised as to her rights, accepted the sum of $100 a month, as provided in the will of Knollenberg, and now that she was advised of her rights she repudiated and rejected all provisions made for her in the will of Knollenberg and elected to take under the laws and offered to return to the estate of Knollenberg all moneys she had received under the $100 monthly payments; that she was the lawful owner and entitled to immediate possession of an undivided interest in all property, both real and personal, owned by Knollenberg, at the time of his death; that the plaintiffs and the trust company had unlawfully taken possession of this property. She asked in the prayer of her cross petition that she be declared to be owner and entitled to immediate possession of all the property, both real and personal, owned by Knollenberg at the time of his death; that the trust company be ejected therefrom and for an accounting and for a partition. The certificate of marriage reciting the marriage of Gerhard Knollenberg and Alma Barnholdt on the 25th day of July, 1928, was attached to this answer. The plaintiffs by way of reply and answer to the cross petition of Alma admitted the divorce and admitted that within less than six months after the divorce Alma and Gerhard Knollenberg entered into a marriage ceremony and that from July 25, 1928, to the date of the death of Gerhard Knollenberg Alma and Gerhard cohabited and lived together and held each other out to the public as husband and wife. For answer to the cross petition of Alma they admitted that certain property was acquired by Gerhard during the time from July 25, 1928, to the date of the death of Gerhard. The awswer further alleged that about July 24, 1928, the defendant Alma, then known as Alma Barnholdt, entered into a prenuptial contract with Gerhard which provided that Gerhard and defendant would enter into a marriage contract upon certain terms. A copy of this contract was attached to the answer. The date and signatures of the contract are not furnished because the contract could not be found. The answer then alleged that by reason of the prenuptial contract Alma was bound by the terms and conditions of it and was bound by her consent to the will of Gerhard Knollenberg, which made provision for her pursuant to the conditions of the prenuptial contract. The contract was attached to this answer and is of little interest to us except that it contained a paragraph as follows:

"Fifth: It is further understood and agreed that in event the said Alma Barnholdt shall live with the said Gerhard Knollenberg, as his wife, until the death of him the said Gerhard Knollenberg, the said Alma Knollenberg, as

the widow of the said Gerhard Knollenberg, shall receive the sum of one hundred dollars ($100) per month, payable monthly, and the said Gerhard Knollenberg will, by trust agreement or/and by will, or other suitable form and manner, make the provision for the said Alma Knollenberg, said sum of one hundred dollars ($100) per month to continue during the natural life of the said Alma Knollenberg and so long as she shall remain the widow of the said Gerhard Knollenberg: *Provided, however,* That should the said Alma Knollenberg remarry after the death of the said Gerhard Knollenberg, then and in such event, said monthly payment of one hundred dollars ($100) shall cease."

The trust company replied to the answer of Alma Knollenberg, admitting the decree of divorce and the marriage of Knollenberg. By way of answer to her cross petition the trust company referred to the prenuptial contract which has already been referred to herein. Alma Knollenberg replied to the answer of the plaintiffs that the original contract between herself and Gerhard had been found in the possession of her attorney; but that she had no independent recollection of ever having entered into any such contract. The answer further alleged that the allegations referring thereto were inconsistent with plaintiff's petition and source of title; that it does not vest title in the plaintiffs; constituted a departure from plaintiffs' petition, were void and ineffective for the reason that no such contract was ever delivered to her and was contrary to public policy.

At the trial the parties stipulated in an agreed statement of facts that plaintiffs were all children or descendants of children of Gerhard Knollenberg; that defendant Alma was the widow of Gerhard Knollenberg; that the Wheeler-Kelly-Hagny Trust Company was trustee; that Knollenberg entered into a prenuptial agreement with Alma; that Alma was granted a divorce from Pete Barnholdt on June 16, 1928; that on July 25, 1928, Gerhard and Alma, while acting in good faith, attempted to enter into a marriage ceremony at Newkirk, Okla., which marriage ceremony defendant at the time of this action claimed was void as a matter of law; that no other attempt to marry was ever made by the parties; that thereafter on May 5, 1935, Knollenberg died and his will was admitted to probate and the trust company qualified as executor; that on December 10, 1937, an order and final discharge was entered and since that time the trust company has been acting as trustee. On December 8, 1938, Alma Knollenberg married R. D. Meyer, who died on December 15, 1938. The trust company refused to make distribution of the properties until a waiver had been obtained from Alma Knollenberg or

her rights, if any, to this estate of Gerhard Knollenberg were judicially determined, and that Alma Knollenberg refused to sign any waiver and claimed an undivided one-half interest in and to all of the properties of Gerhard Knollenberg as his common-law wife, and that Alma and Gerhard Knollenberg were residents of Kansas during all times material to this action and for many years prior to July 25, 1928; that from July 25, 1928, to the date of the death of Gerhard Knollenberg Alma and Gerhard lived together and held each other out to the world as husband and wife; that Alma Knollenberg never had at any times in the proceedings in the estate of Gerhard made a widow's election to take under the will of Gerhard Knollenberg, but did accept from the trust company $100 a month from May, 1935, to and including December, 1938, totaling $4,400; that Alma Knollenberg offered to tender back this $4,400, which sum was to be deducted from her recovery to be had, if any. It was then agreed as to certain property that it was acquired by Gerhard Knollenberg during the period of the time from July 25, 1928, until the date of his death.

Following the agreed statement of facts certain testimony was taken, which will not be noted at this time.

The court found the facts about as they have been recited here from the agreed statement, and that some fourteen or fifteen thousand dollars represented the increase in value of the property during the years of the marriage and that the widow was seeking to recover a share of that money. The court made conclusions of law as follows:

"CONCLUSIONS OF LAW

"This case presents a unique situation.

"(A) Alma Knollenberg Meyer and Mr. Knollenberg both knew at the time of their attempted marriage that they could not be legally married in the state of Kansas; they knew at the time they signed the prenuptial agreement that they could not be, and at the time that the will was made, and at the time consent was given by her to its provisions. The attempted marriage after a few months became a common-law and legal marriage in Kansas, pursuant to their original desires, and continued for approximately six and a half years. She accepted the payments of one hundred dollars per month, as provided in these various instruments, and married again believing and knowing the provision in the contract and will would terminate her monthly payments. Her new nuptial venture proved of short duration by reason of death. During all the lifetime of her previous husband and until her next marriage, it had been their desire and was her desire to carry out the agreements. She cannot now, by reason of the fact that her last marriage was shortly terminated, again change her mind and recover one-half of the estate.

"(B) She is no longer entitled to the one hundred dollars per month provision under the will of Knollenberg, and, as admitted in the brief, she is not entitled to any of the property covered by the trust agreement.

"(C) She is precluded from recovering the balance claimed of the amount accumulated during the marriage.

"(D) Plaintiffs are the only persons entitled to any of the income or corpus of the trust estates.

"(E) Plaintiffs are entitled to judgment for costs."

A motion to modify these findings of fact and conclusions of law in certain particulars was made by defendant, also a motion for judgment on the findings and a motion for a new trial. The court overruled all motions. At the request of the plaintiffs the findings of fact were modified so that a particular finding should read as follows:

"On the 25th day of July, 1928, or some five weeks thereafter she entered into a prenuptial contract with the deceased Gerhard Knollenberg knowing the right of a widow to one-half of her husband's estate, agreeing that they would enter into a contract by which she would claim no interest in any property then owned or thereafter acquired by the deceased, and at his death would accept a provision of $100 per month for the rest of her life, or until she remarried."

Judgment was rendered for plaintiffs that they were the only persons entitled to any income or the corpus of the trust estates; that defendant Alma Knollenberg Meyer was no longer entitled to one hundred dollars per month under the provisions of the will; that she was not entitled to any of the property covered by the trust agreement of April 10, 1928, and that she was precluded from recovering the balance claimed of the amount accumulated during her marriage to Gerhard Knollenberg, and that the costs be assessed against the defendant Alma Knollenberg Meyer. Hence this appeal.

Defendant contends that the marriage in Oklahoma was void; that it did not become a marriage at common law until six months from the date of the divorce decree, hence the contract entered into by Gerhard Knollenberg and defendant was void because it was given for an illegal consideration.

She next argues that the consent given by her to the will of Gerhard was invalid because she was not his wife at the time the consent was made. A strong argument is made by plaintiffs that while our statutes do not permit the recognition of a marriage within less than six months of the granting of a divorce decree, still this marriage was valid in Oklahoma, and was a good consideration for the contract. We shall not pass on that interesting question, how-

ever, since there are other grounds that compel an affirmance of the judgment. The prenuptial contract does not contain any date when the parties expected to be married. The mere fact that the contract was made during the six-months period when they could not marry did not render it void. In *Cooper v. Bower,* 78 Kan. 156, 96 Pac. 59, this court was considering a promise to marry that was made before one of the contracting parties had been divorced six months. The party sought to be held argued that the contract was invalid on that account. This court said:

"A further claim is made that no recovery should have been allowed because the alleged promise to marry was given, and the action for its breach was begun, before the expiration of six months from the date of defendant's divorce. The statute (Gen. Stat. 1901, § 5142) provides that every decree of divorce shall recite that it does not become absolute and take effect until the expiration of six months from its date. This provision, however, has been interpreted as a mere restriction upon marriage within that time. (*Durland v. Durland,* 67 Kan. 734, 74 Pac. 274, 63 L. R. A. 959.) Upon the rendition of a decree of divorce the parties cease to be husband and wife. Neither may lawfully marry again within six months, but either may during that period make a legal contract to marry after its expiration." (p. 163.)

It is true that the parties in this case did get married before the expiration of the six months, but that fact of itself does not appear in the contract nor does the contract provide that the marriage should take place within the six-months period. As far as this record shows the decision to get married so soon was made after the contract was made.

In *Mitchell v. Clem,* 295 Ill. 150, 128 N. E. 815, the court was considering a case where an agreement to marry was made while one of the parties was under disability on account of just being divorced and the contracting parties did marry within the period of time when the statutes of Illinois declared such a marriage void. The court held:

"An agreement to marry when one of the parties has become qualified to marry by the expiration of the statutory period following her divorce is legal and is not rendered illegal by the fact that the parties thereafter contracted a void marriage in another state before they were legally married." (Syl. ¶ 2.)

This opinion announces the same rule by this court in *Cooper v. Bower,* supra, and goes a step further and holds the contract good even though the marriage, which was the consideration for it, was actually performed before the time within which a valid marriage could be performed had passed. This holding was based on the general rule laid down in 17 C. J. S. 545, as follows:

"To invalidate the contract, the illegality must be inherent and not merely collateral. The contract is to be judged by its character and not by what the parties may do, or attempt to do, with the fruits of it, and the courts will look to the substance and not the mere form of the transaction. If the contract itself discloses no illegality and may be performed in a legal manner, it is not rendered unenforceable by the fact that it may also be, or is actually, performed in an illegal manner."

*Keith Furnace Co. v. Mac Vicar*, 225 Ia. 246, 280 N. W. 486, was a case where a property owner had given his note to a furnace company for the installation of a furnace. At the time the note was signed the building code of Des Moines required that before a furnace such as the one in question was installed a permit should be obtained by the furnace company. It was admitted that this was not done. The defendant argued that the failure of the furnace company to do this made the note void.

"As respects enforceability of note given to furnace company for installation of oil-burning heating system after furnace company had failed to obtain permit for installation of burner as required by municipal building code, contract for installation of the system was not invalid as stipulating for an act which was *malum in se* or *malum prohibitum,* where contract was not entered into with intent to violate municipal building code, since consideration was legal and contract was not connected with illegal purpose or illegal business, and could have been performed without violation of law." (Headnote, ¶ 4.)

In *Smyth Bros. et al. v. Beresford,* 128 Va. 137, 104 S. E. 371, the plaintiff sued for commissions he claimed to have earned by helping defendants sell horses to the British government. The defendants argued that part of the contract had been that he was to use his influence in an unlawful way. The court reviewed the testimony, offered to sustain this claim, and said:

"'An intention to violate law or morals is not to be presumed.' (*Bergen v. Frisbie,* 125 Cal. 168, 57 Pac. 784.)

"'The law does not presume that parties to a contract intend by it to accomplish an illegal object, but it rather presumes that they intended to accomplish a legal purpose.' (Elliott on Contracts, section 1065.)

"'(17) The law will not presume, unless it is forced to do so, that a person intends to do an illegal act. It will not therefore presume that the parties intended to make an illegal contract.' (*Richards v. Weiner Co.,* 207 N. Y. 59, 100 N. E. 592.)

. . . . . . . . . . .

"'As tending to indicate the immorality of a contract the contingent character of the fee works no such result.' (*Bergen v. Frisbie,* supra, 125 Cal. p. 786, 57 Pac. 784.)

"'In view of these citations, affording the appropriate rule of interpretation for an instrument sought to be impressed with the implication of an unlawful purpose, the language of the plaintiff's letter, cited *supra,* was properly construed to express an innocent intent.'

"'As was said in *Brightman v. Bates,* supra, the question before us is not whether or not it would be possible to carry out the contract in a way which would have made the contract bad, if specified in it, but whether it was impossible to carry out the contract in a way which might lawfully have been specified in advance.' (*Carnegie v. Security Trust Co.,* 111 Va. 1, 68 S. E. 412, 31 L. R. A., n. s., 1186, 21 Ann. Cas. 1287.)" (p. 165.)

In *Gardiner v. Burket,* 3 Cal. App. 2d, 666, plaintiff had sued the defendant on an oral contract, by the terms of which the plaintiff was to remove a building from her lot in an oil field, and by which defendant was to pay the reasonable value of the house. Defendant argued, among other things, that the plaintiff could not recover because she unlawfully removed the building for the reason that a permit to remove the house had not been obtained from the city. The court said:

"The plaintiff made a contract with the Schuck Construction Company as contractors to remove the house. It is not claimed that such a permit could not have been obtained, and it is apparent that the contract could have been performed in a legal manner. Certainly there is no intention disclosed in the terms of the contract itself to perform it without obtaining a permit." (p. 669.)

To the same effect is the rule laid down in 12 Am. Jur. 647, which reads as follows:

"In order to avoid an agreement which can be legally performed on the ground that there was an intention to perform it in an illegal manner, it is necessary to show that there was the wicked intention to break the law; and if this is so, the knowledge of what the law is becomes of great importance. Accordingly, where a contract could have been performed in a legal manner as well as in an illegal manner, it will not be declared void because it may have been performed in an illegal manner, since bad motives are never to be imputed to any man where fair and honest intentions are sufficient to account for his conduct."

See, also, *Fox v. Rogers,* 171 Mass. 546, 50 N. E. 1041.

While these authorities do not deal with contracts to marry and prenuptial contracts, the general principles announced in them apply to such contracts as well as others. It is clear that no intention to violate the law appears upon the face of the prenuptial contract. In order for us to hold that this contract was void because the consideration was to perform an invalid marriage we would be compelled to say that it was void because the marriage referred to in the

contract was invalid regardless of the intention of the parties when they entered into the contract. This we cannot do. We will not presume that the parties intended to get married before the six-months period had passed. The presumption is that they intended to obey the law when the contract was made and this presumption is not overcome by the fact that they actually did get married before the six-months period had passed.

In this case we are all agreed that even if the marriage in Oklahoma be disregarded, this couple became man and wife in the eyes of the law six months after the divorce decree was entered. (See *Freeman v. Fowler Packing Co.*, 135 Kan. 378, 11 P. 2d 1276.) Thus, whether we look to the ceremony in Oklahoma or the relationship that came into being on account of the parties living together as man and wife in Kansas, we find nothing that would make the prenuptial contract void.

There are other reasons urged by plaintiffs as to why the judgment of the trial court was correct. However, we refrain from passing on them, as it is not necessary for us to do so to dispose of this case. We hold that the prenuptial contract was valid, and enforeceable, and by it defendant Alma Knollenberg gave up any rights in her husband's estate except the right to $100 a month as long as she should live or until she should remarry. There seems to be no argument but that she forfeited her right to the payments of $100 a month by her marriage after the death of Knollenberg.

The judgment of the trial court is affirmed.