Benjamin H. SAUNDERS, Executor, Estate of Sophus Dee Hanson, deceased, et al., Appellants,

v.

Anne Baker Bein HANSON, Appellee.

No. 17508.

United States Court of Appeals District of Columbia Circuit.

Argued June 6, 1963.

Decided Dec. 26, 1963.

Petition for Rehearing En Banc Denied Feb. 28, 1964.

Mr. John A. Beck, Washington, D. C., with whom Mr. Ellis N. Slack, Washington, D. C., was on the brief, for appellants.

Mr. John Alexander, Washington, D. C., with whom Mr. Walter W. Johnson, Jr., Washington, D. C., was on the brief for appellee.

Before EDGERTON, Senior Circuit Judge, and DANAHER and BURGER, Circuit Judges.

## PER CURIAM.

█ This appeal involves the right of appellee to receive a statutory share of the estate of her former husband, who died within six months after the entry of a decree of divorce but before that decree became final under D.C.Code, § 16–421 (1951). The statute says "no such final decree [for absolute divorce] shall become absolute and take effect until the expiration of six months after its date." This court in Oliver v. Oliver, 87 U.S.App. D.C. 334, 336, 185 F.2d 429, 431 (1950), pointed out:

"This contemplates a provisional decree of divorce only, which cannot mature and become effective until lapse of the intervening time."

█ We held in Wesley v. Brown [1] that death of one of the parties during the six-month period following a divorce decree abated the action. Again, in Dillard v. Dillard,[2] discussing the underlying policy of our law, we said the District of Columbia statute

"adopts and clearly expresses the broad policy of postponing for six months, *and for all purposes*, the effective date of any decree of absolute divorce granted in the District of Columbia." (Emphasis added.)

It is our view that the District Court, Tamm, J., clearly discerned and applied the law as interpreted by repeated decisions of this court.

Other contentions advanced on brief and in argument have been sufficiently treated in the opinion [3] of the District Judge. The judgment is

Affirmed.

BURGER, Circuit Judge (concurring specially).

I agree that our holding in Wesley v. Brown, 90 U.S.App.D.C. 351, 196 F.2d 859 (1952), was binding on the district court and requires an affirmance with respect to the construction of D.C.Code Ann. § 16–421 (1961).[1] However, the holding in Wesley v. Brown seems ill-considered since its construction of the statute went far beyond the congressional purpose and here would allow a spouse, who should certainly be considered divorced for these purposes, to take as the lawful surviving spouse as though no divorce had occurred, simply because the

1. 90 U.S.App.D.C. 351, 196 F.2d 859 (1952).

2. 107 U.S.App.D.C. 214, 218, 275 F.2d 878, 882 (1960).

3. In re Hanson's Estate, 210 F.Supp. 377 (D.C.1962).

1. The D.C.Code provides:
"No final decree annulling or dissolving a marriage shall be effective to annul or dissolve the marriage until the expiration of the time allowed for taking an appeal, nor until the final disposition of any appeal taken, and every final decree shall expressly so recite. Every decree for absolute divorce shall contain the date thereof and no such final decree shall be absolute and take effect until the expiration of six months after its date."

six month waiting period had a few more days to run. That paradoxical result was neither sound nor necessary under a statute meant only to deter hasty divorces and hasty remarriage.

Sophus D. Hanson died domiciled in Washington, D. C., on January 10, 1960, leaving $5 to his divorced wife, Anne Baker Bein Hanson, the appellee, and the entire residue to a daughter of his prior marriage. Six months lacking 12 days before his death, Hanson had been granted a decree of absolute divorce from appellee but pursuant to Section 16–421 that decree provided that it could not become effective until six months from the date of its entry. Appellee had sought the divorce but it was denied her and granted to Hanson on grounds of desertion. The court denied appellee any alimony or a share of Hanson's estate.

Arbitrary results are often a necessary concomitant of statutes which provide for the determination of legal rights with respect to a fixed period of time, but invariably the seemingly arbitrary result serves the statutory end. See, e. g., United States v. Robinson, 361 U.S. 220, 80 S.Ct. 282, 4 L.Ed.2d 259 (1960). Here the purpose of the statute is fully effectuated when it prevents remarriage within six months after the decree; it should have no other consequence. Some jurisdictions accomplish this same objective by a statute which simply and directly prohibits remarriage within a certain period, without more. See, e. g., Va.Code Ann. § 20–118 (1960) ; W.Va.Code Ann. § 4722 (1961). I would treat Section 16–421 as if it so provided and confine its operation to its intended purpose by precluding either spouse from sharing in the estate of the other who dies *after* the final decree has actually been entered but during the six month period.[2] To grant

to the spouse in these circumstances the same rights as an *undivorced* spouse, to me tends not to enhance or strengthen but rather to debase the marital relationship.

In reaching its holding in Wesley v. Brown, supra, I suggest with all deference, that this court did not give full and adequate consideration to the basic problem involved. The very brief opinion tells us little except that Oliver v. Oliver, 87 U.S.App.D.C. 334, 185 F.2d 429 (1950), "is * * * dispositive." The *Oliver* case held void a foreign remarriage contracted within six months after the entry of the local decree. In reaching that result in the Oliver case this court considered the legislative history of Section 16–421 and noted that "other statements by members of the [House] Committee clearly indicate that the provision was intended as a barrier to hasty and fraudulent divorces." 87 U.S.App. D.C. at 337, 185 F.2d at 432.[3]

Our examination of a statute should be a search for meaning. Clearly, the meaning and purpose of Congress was, as its records show, to prevent "easy divorce *and* hasty remarriage of divorced persons." 87 U.S.App.D.C. at 338, 185 F.2d at 433. (Emphasis added.) That purpose is not served in the slightest by permitting a "divorced" spouse the same inheritance rights as a *surviving* spouse simply because the six month period, which was intended only to prohibit remarriage, has twelve days to run. As I see it, the congressional purpose and the underlying public policy is fully satisfied without the illogical and incongruous result we now feel compelled to reach here. Except for the restraint on remarriage during the six month waiting period, the parties should be regarded for all other purposes as divorced persons.[4] The lim-

---

2. See 39 Geo.L.J. 332, 334 (1951).

3. See 79 Cong.Rec. 11587 (1935) (remarks of Representative Carpenter, the bill's sponsor).

4. Cf. Brown v. Brown, 97 F.Supp. 237 (D.D.C.1950) (dictum). *But see* Fleischhauer v. Hazen, 80 F.Supp. 74, 69 Wash. L.Rep. 221 (D.D.C.1941), in which the

district court awarded pension payments to decedent's first wife, although the husband had died subsequent to entry of an "absolute decree" but prior to expiration of the six months; the court cited no cases nor the statute and may have been influenced by the fact that the other claimant was a purported second wife who asserted the validity of a Virginia

ited purpose of the statute was recognized in Steele v. Steele, 65 F.Supp. 329, 332 (D.D.C.1946), in which the divorce decree was viewed as severing the marital bond immediately upon its entry so as to allow the divorced wife to sue the divorced husband in tort for acts which occurred within the six month period before the decree was final. Had the court considered the parties married after the entry of the divorce decree, the one spouse could not have sued the other in tort. In Tillinghast v. Tillinghast, 58 App.D.C. 107, 110, 25 F.2d 531, 534 (1928), this court, construing Section 983a of the D.C.Code in effect in 1928, with essentially the same language as is found in Section 16–421, held that facts—the death of one party— arising after a decree (in that case for annulment) but before the expiration of the interlocutory period for taking an appeal operated to make the decree final in order to avoid illegitimacy of offspring of the remarriage of one party.[5]

divorce, obtained by deceased from his first wife, which the court found void because secured by "the fraud practiced on [the] court by the decedent."

Oklahoma and Kansas have adopted identical statutory provisions, similar to D.C.Code § 16–421, declaring that divorce decrees shall not take effect until six months after the decree is entered; see Kan.Gen.Stat.Ann. § 60–1514 (1949); Okla.Stat., tit. 12 § 1280 (1961). The supreme courts of both states for over sixty years and without exception have applied these provisions only to a remarriage context, reasoning that because "the sole purpose of the statutory provision * * * is to prevent the parties from remarrying within that period * * *. For all other purposes the decree takes effect the same as any other judgment." First Nat. Bank of Elk City v. Springfield Fire & Marine Ins. Co., 104 Kan. 278, 280, 178 P. 413, 414 (1919). For cases construing the Kansas statute, see Durland v. Durland, 67 Kan. 734, 74 P. 274, 63 L.R.A. 959 (1903); Jacobs v. Gaskill, 69 Kan. 872, 77 P. 550 (1904) (per curiam); Woolverton v. Johnson, 69 Kan. 708, 77 P. 559 (1904); Johnson v. Grand Lodge of A. O. U. W., 91 Kan. 314, 137 P. 1190, 50 L.R.A.,N.S., 461 (1914); Knollenberg v. Meyer, 151 Kan. 768, 100 P.2d 746 (1940); Pickard v. Pickard, 241 Iowa 1307, 45 N.W.2d 269 (1950) (applying Kansas statute); King v. Klemp, 26 N.J.Misc. 140, 57 A.2d 530 (Ct.Chanc.1947) (same); In re Troemper's Estate, 160 Kan. 464, 163 P.2d 379 (1946) (dictum). For cases construing the Oklahoma statute, see In re Smith, 2 Okl. 153, 37 P. 1099 (1894); Barnett v. Frederick, 33 Okl. 49, 124 P. 157 (1912); Brown v. Capps, 164 Okl. 91, 22 P.2d 1008 (1953); In re Trent's Claim, 68 Wyo. 146, 231 P.2d 180, 181 (1951) (construing Oklahoma statute); Bauer v. Abrahams, 73 Colo. 509, 216 P. 259 (1923) (construing both statutes); In the Matter of Estate of Sanders, 147 Cal.

App.2d 450, 305 P.2d 655 (Dist.Ct.App. 1957) (construing Oklahoma statute); Perkins v. Perkins, 237 S.W.2d 659 (Tex. Ct.Civ.App.1951) (same); Green v. McDowell, 210 Mo.App. 517, 242 S.W. 168 (Ct.App.1922) (per curiam) (construing both statutes); cf. In re Harper's Estate, 1 Utah 2d 296, 265 P.2d 1005 (1954). *But see* Holmberg v. Holmberg, 106 Neb. 717, 184 N.W. 134 (1921); Sovereign Camp W.O.W. v. Billings, 107 Neb. 218, 185 N.W. 426 (1921); Williams v. Williams, 146 Neb. 383, 19 N.W.2d 630 (1945); In re Troemper's Estate, supra, (dictum).

Many states hold that the death of one spouse subsequent to an interlocutory or nisi divorce decree but prior to a final decree destroys the marital relationship, thereby abating the original action and rendering impossible the issuance of or ripening into a subsequent absolute divorce decree. See, e. g., Morris v. Propst, 98 Colo. 213, 55 P.2d 944, 104 A.L.R. 650 (1936); Chase v. Webster, 168 Mass. 228, 46 N.E. 705 (1897). These cases are collected and digested at 104 A.L.R. 654–63 (1936); 158 A.L.R. 1205–209 (1945); 2 A.L.R. Blue Book Supp.Dec. 705 (1952); 3 A.L.R. Blue Book Supp. Dec. 651 (1958); 1963 A.L.R. Blue Book Supp. Dec. 498. *But cf.* In re Harper's Estate, supra. Significantly, the statutes involved in these cases provide for initial conditional-type divorce decrees, sometimes denominated interlocutory, sometimes nisi, which the House Report accompanying D.C.Code § 16–421 as an amendment specifically noted it was eliminating: "This bill makes no provision for an interlocutory decree [as did the then present law] * * *." H.Rep. No. 1532, 74th Cong., 1st Sess. 4 (1934). *But cf.* 79 Cong.Rec. 11587 (1935) (remarks of Representative McCormack).

5. The majority opinion cites dictum from Dillard v. Dillard, 107 U.S.App.D.C. 214, 218, 275 F.2d 878, 882 (1960), which involved construction of Virginia's divorce

It is not without significance that we have long treated the date of the *entry* of a divorce decree as fixing the time for appeal as from a final order. See, *e. g.*, Roberts v. Roberts, 95 U.S.App.D.C. 382, 222 F.2d 408 (1955) (decree entered April 26, 1954; notice of appeal filed May 11, 1954); Lort v. Lort, 91 U.S.App.D.C. 118, 198 F.2d 598, 34 A.L.R.2d 951 (1952) (decree entered May 9, 1951; notice of appeal filed June 8, 1951). See also H.R. Rep. No. 1532, 74th Cong., 1st Sess. 4 (1934).

In the *Oliver, Tillinghast* and *Steele* cases dealing with this statutory language prior to the Wesley holding, the courts have carefully confined the impact of the statute to its objective of deterring hasty divorce and hasty remarriage. Only in the *Wesley* case was the statute given effect beyond its intended purpose. My view that the *Wesley* holding was not as carefully considered as the earlier cases and perhaps not as carefully as the subject merited is buttressed by the fact that neither the *Steele* nor the *Tillinghast* cases, supra, were cited. Indeed, an examination of our records discloses that the briefs in the *Wesley* case failed to bring these cases to this court's notice. Nor was any reference made to the fact that we had long considered divorce decrees final for appeal purposes when entered, rather than six months later.

We ought not strain, as I think was done in the *Wesley* case, to construe a statute to produce an anomalous and unreasonable result. The *Tillinghast* opinion, in drawing away from the literal language of the D.C.Code provision reminded that "it is well-settled law that, where a strict construction of a statute leads to injustice, absurdity, and incongruity, the court will look to the purpose and the spirit of the statute in declaring

laws, not Section 16–421 of the District of Columbia Code. Indeed, the court in *Dillard* specifically noted that the issue in the *Oliver* case "related only to remarriage," 107 U.S.App.D.C. at 219, 275 F.2d at 883, and that the *Oliver* and *Wesley* cases "provide[d] no guidance in the instant [*Dillard*] case arising under a Virginia statute." *Id.* at n. 8.

its effect." 58 App.D.C. at 109, 25 F.2d at 533.

I suggest we should re-examine our *Wesley* [6] holding in light of this principle of statutory construction.

6. Both parties now before us apparently assumed that the *Wesley* holding was binding on this issue and therefore argued the case on other grounds; they did not brief or argue the central point which I urge in this opinion. In that posture the District Judge had no occasion to deal extensively with this issue as he did with other points in his exhaustive opinion.